NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HEATH TEC DIVISION/SAN
FRANCISCO, Respondent.

No. 76–1884.

United States Court of Appeals,
Ninth Circuit.

Jan. 5, 1978.

Rehearing and Rehearing In Banc
Denied March 15, 1978.

Carol A. De Deo (argued), San Francisco, Cal., for petitioner.

Harry Finkle (argued), of Littler, Mendelson & Fastiff, San Francisco, Cal., for respondent.

Before MERRILL and GOODWIN, Circuit Judges, and NIELSEN,* District Judge.

NIELSEN, District Judge:

The National Labor Relations Board petitions this court to enforce its order issued against respondent Heath Tec Division/San Francisco for refusing to bargain with a certified union in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act, as amended 29 U.S.C. §§ 158(a)(1) and (5).[1] We find the Board's Decision and Order[2] does not deny respondent administrative due process and is supported by substantial evidence; therefore, we order enforcement.

I

The facts underlying the Board's findings and conclusions are as follows. After two prior representation elections had been set aside, on April 19, 1974, an election was held in a unit of production and maintenance employees pursuant to stipulations

---

* Honorable Leland C. Nielsen, United States District Judge, for the Southern District of California, sitting by designation.

1. 29 U.S.C. § 158(a) provides in relevant part:
 (a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \* \*
 (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

2. The Board's order is reported at 222 N.L.R.B. No. 151 (1976).

between Heath Tec and the Union.[3] The election was by secret ballot under the direction and supervision of the Regional Director of the N.L.R.B. for Region 20.

On April 26, 1974, Heath Tec filed twenty-one objections[4] alleging that acts by the Union and third persons interfered with a free and fair election and required the setting aside of the Union's election victory. On August 21, 1974, following an investigation of the objections and consideration of Heath Tec's supporting evidence, the Acting Regional Director issued a report, recommending that all objections be overruled. Heath Tec timely filed exceptions to the report and requested either another election or a hearing.

- On December 16, 1974, the Board ordered a hearing limited to four specific objections which alleged (1) threats and rumors of deportation for any employees who voted against the Union and (2) the Regional Director's knowledge thereof. After conducting a hearing on January 20, 1975, the Hearing Officer issued a report, recommending that the four objections be overruled. Heath Tec filed with the Board objections to the report and a supporting brief. Health Tec repeated its contentions with respect to the deportation rumors and further claimed that it was denied due process by suppression of evidence in that the Hearing Officer's revocation of Heath Tec's *subpoenas duces tecum* (directing certain N.L.R.B. personnel to testify and produce investigative files) deprived it of the only evidence as to the Region's knowledge of the deportation threats.

On July 30, 1975, after considering the relevant reports, exceptions, and briefs, the Board adopted the findings and recommendations of the Acting Regional Director and

Hearing Officer. Consequently, the results of the April, 1974 election were final,[5] and on August 28, 1975, the Union was certified.

Shortly thereafter the Regional Director issued a complaint alleging that on September 11, 1975, Heath Tec refused to bargain with the Union in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act, as amended 29 U.S.C. §§ 158(a)(1) and (5).[6] Heath Tec admits refusing to bargain for the sole purpose of obtaining judicial review. Accordingly, summary judgment was entered against respondent in an order of the Board dated February 20, 1976,[7] and it is this order which the Board petitions this court to enforce.

■ The scope of our review is limited. If the findings of the National Labor Relations Board are supported by substantial evidence on the record considered as a whole, they are conclusive; and so long as the Board did not misapply the law, the order is to be affirmed. National Labor Relations Act Section 10(e), as amended 29 U.S.C. § 160(e); *Portland Willamette Co. v. N.L.R.B.*, 534 F.2d 1331, 1334 (9th Cir. 1976).

II

When the Board ordered the January 20, 1975, representation hearing on deportation rumors, in order to determine whether the decision to continue with the election of April 19, 1974, was proper, the Board placed in issue the evidence that had been before Region 20 and its knowledge thereof. Hoping to obtain this evidence, Heath Tec served Regional Director Hoffman (director for Region 20) and Field Agent Kaplan (agent in charge of the investigation of the deportation rumors at Heath Tec's plant

---

**3.** The union involved here is the International Association of Machinists and Aerospace Workers, AFL–CIO, District Lodge No. 115.

**4.** By letter of May 9, 1974, Heath Tec withdrew three of the objections.

**5.** The results of the election were 13 votes cast for the Union, 7 against, and 1 undetermined challenged ballot.

**6.** *See* note 1 *supra.*

**7.** *See* note 2 *supra.*

prior to the election) with *subpoenas duces tecum* requiring their testimony and production of records. Heath Tec also requested the Board's General Counsel to consent to the subpoenaed testimony and documents, pursuant to Rule 102.118 of the Board's Rules and Regulations, 29 C.F.R. § 102.118.[8] The General Counsel denied Heath Tec's request based on the recognized privilege of preserving the confidentiality of investigative files, but stated that the denial did not preclude a renewal of the request at the hearing if necessity could be established.

 At the hearing on January 20, 1975, Heath Tec presented only two witnesses. Mr. Rodriguez, a company supervisor, testified about vague rumors he had heard from employees whose names he could not remember. Furthermore, portions of his testimony conflicted with an earlier affidavit of his. Consequently, although aware of the alleged rumors, the Hearing Officer could have easily chosen to discredit much of Rodriguez' testimony.[9]

The only other witness was one of Heath Tec's attorneys, Mr. Carlson, who testified

**8.** 29 C.F.R. § 102.118 provides in pertinent part:

(a) Except as provided in section 102.117 of these rules respecting requests cognizable under the Freedom of Information Act, no regional director, field examiner, administrative law judge, attorney, specially designated agent, general counsel, member of the Board, or other officer or employee of the Board shall produce or present any files, documents, reports, memoranda, or records of the Board or of the general counsel, whether in response to a *subpoena duces tecum* or otherwise, without the written consent of the Board or the chairman of the Board if the document is in Washington, D.C., and in control of the Board; or of the general counsel if the document is in a regional office of the agency or is in Washington, D.C., and in the control of the general counsel. Nor shall any such person testify in behalf of any party to any cause pending in any court or before the Board, or any other board, commission or other administrative agency of the United States, or of any State, territory, or the District of Columbia, or any subdivisions thereof, with respect to any information, facts, or other matter coming to his knowledge in his official capacity or with respect to the contents of any files, documents, reports, memoranda, or records of the Board or the general counsel, whether in answer to a subpoena or otherwise, without the written consent of the Board or the chairman of the Board if the person is in Washington, D.C., and subject to the supervision or control of the general counsel. A request that such consent be granted shall be in writing and shall identify the documents to be produced, or the person whose testimony is desired, the nature of the pending proceeding, and the purpose to be served by the production of the document or the testimony of the official. Whenever any *subpoena ad testificandum* or *subpoena duces tecum*, the purpose of which is to adduce testimony or require the production of records as described hereinabove shall have

been served on any such person or other officer or employee of the Board, he will, unless otherwise expressly directed by the Board or the chairman of the Board or the general counsel, as the case may be, moved pursuant to the applicable procedure, whether by petition to revoke, motion to quash, or otherwise, to have such subpoena invalidated on the ground that the evidence sought is privileged against disclosure by this rule. (b)(1) Notwithstanding the prohibitions of paragraph (a) of this section, after a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint under section 10(c) of the act, the trial examiner shall, upon motion of the respondent, order the production of any statement (as hereinafter defined) of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the administrative law judge shall order it to be delivered directly to the respondent for his examination and use for the purpose of cross-examination.

\* \* \* \* \* \*

(c) The provisions of subsection (b) of this section shall also apply after any witness has testified in any postelection hearing pursuant to section 102.69(d) and any party has moved for the production of any statement (as hereinafter defined) of such witness in possession of any agent of the Board which relates to the subject matter as to which the witness has testified. The authority exercised by the administrative law judge under subsection (b) of this section shall be exercised by the hearing officer presiding.

**9.** As this court said in *N.L.R.B. v. Ayer Lar Sanitarium*, 436 F.2d 45, 49 (9th Cir. 1970):

The examiner need not accept as true statements made by the [employer's] own witnesses, even if uncontradicted, and the examiner is entitled to make such a determination

to all the events leading up to the hearing in question. In particular, he testified to a conversation between himself and Agent Kaplan subsequent to Kaplan's investigation at Heath Tec's facilities. Carlson testified that immediately after the interviews Agent Kaplan stated, "There is no doubt that it [the rumor] is going around out there; that if the employees don't vote for the Union, they will be deported."

Following the testimony of the supervisor and the attorney, Heath Tec called as a witness Agent Kaplan for the purpose of directly establishing Region 20's knowledge of the deportation rumors. Counsel for Region 20 then offered petitions to revoke the subpoenas on behalf of Kaplan and Hoffman, which the Hearing Officer summarily granted. After argument and a short recess to reconsider the ruling, the Hearing Officer stated, "I do not have in my power the ability to compel the two subpoenaed individuals, with any additional information they have, to testify, based on Section 102.-118 of the Rules and Regulations."

In *General Engineering, Inc. v. N.L.R.B.*, 341 F.2d 367 (9th Cir. 1965), this court held that in the absence of some valid evidentiary objection or privilege,[10] Rule 102.118 cannot be the basis for revocation of properly issued *subpoenas duces tecum*. That ruling was reaffirmed in *N.L.R.B. v. Seine and Line Fisherman's Union of San Pedro*, 374 F.2d 974 (9th Cir. 1967), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967), and the court noted that the mere existence of Rule 102.118 by itself was not enough to create any recognized evidentiary privilege. 374 F.2d at 980. Even where, as in the present case, the General Counsel originally denied permission based on an established privilege, we

are convinced that the Hearing Officer is required to make an *independent* evaluation of privilege before quashing a subpoena. *See Seine, supra*, 374 F.2d at 980–81. The Hearing Officer here made no such finding and thus was clearly in error.

However, we conclude that the error here, as in *Seine*, does not require remand. We are mindful of Section 706 of Title 5, U.S.C., which states that a court, on review of an administrative determination, should take due account of the rule of prejudicial error.

> Procedural irregularities are not per se prejudicial; each case must be determined on its individual facts . . . . Moreover, "the burden of showing that prejudice has resulted" is on the party claiming injury from the erroneous rulings. [Citations omitted.] *Seine, supra*, 374 F.2d at 981.

Heath Tec has not met that burden here.

Heath Tec was well aware of the privilege of preserving the confidentiality of investigative files that had previously been asserted by the Board's General Counsel. Under such circumstances, therefore, it was incumbent upon Heath Tec to try to prove its case without resort to the privileged evidence.

From a review of the record, it is apparent that Carlson was at the Heath Tec facility while Kaplan interviewed between six and nine employees. Nonetheless, at the hearing on January 20th, the only employee Heath Tec called as a witness was Supervisor Rodriguez, whose testimony was sufficiently vague and contradictory that the Hearing Officer could have entirely discredited it. In fact, when asked at the hearing whether any other employees

---

solely on the basis of his evaluation of the witnesses' demeanors. [Citations omitted.]

**10.** The court suggested as possible objections "evidence which is irrelevant or immaterial, or is privileged under some express statutory provision or under some rule of evidence cognizable in the federal district courts;" and with respect to the privileges accorded governmen-

tal agencies such as the N.L.R.B., valid objections include "claims that the information sought would disclose confidential informants, state secrets, military secrets, or mental processes of those engaged in investigative or decisional functions." [Citations omitted.] *General Engineering, Inc. v. N.L.R.B.*, 341 F.2d 367, 374–75 (9th Cir. 1965).

would be called to testify, counsel for Heath Tec declined even to discuss whom it had subpoenaed.

Having fallen far short of meeting its evidentiary burden through its own resources, Heath Tec *then* sought to call Agent Kaplan as a witness. Seeing how Heath Tec missed several opportunities to present a stronger case, we do not see how it can claim prejudice now. It appears that any prejudice to Heath Tec resulted from its own presentation at the hearing—and not from the erroneous ruling—since there was no attempt on the part of Heath Tec first to meet its evidentiary needs on its own rather than having to rely on the privileged testimony.

Accordingly, we conclude that even though the Hearing Officer and the Board erroneously relied on 29 C.F.R. § 102.118 rather than an evidentiary objection or privilege, Heath Tec was not denied administrative due process, since it has not adequately shown that prejudice resulted directly from the error.

### III

■ Heath Tec also contends that the Board incorrectly refused to set aside the election of April 19, 1974. Although it is true that the stated goals of the N.L.R.B. are to establish "laboratory conditions" for collective bargaining elections, this court has ruled that it will set aside an election only when the election process is "significantly impaired." *Heavenly Valley Ski Area v. N.L.R.B.*, 552 F.2d 269, 272 (9th Cir. 1977); *N.L.R.B. v. G. K. Turner Associates*, 457 F.2d 484, 487 (9th Cir. 1971). On the record presently before us, we cannot say that there existed a significant impairment of the election process. Moreover, where the source of the questionable conduct is

11. *See* note 9 *supra.*

12. A reviewing court may not ". . . displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal*

not the union or the employer—and there is no evidence of the source of the deportation rumors—the Board and courts are especially hesitant to set aside an election. *N.L.R.B. v. Sauk Valley Manufacturing Co., Inc.*, 486 F.2d 1127, 1131–32 (9th Cir. 1973).

As mentioned before, the testimony of Mr. Rodriguez and Mr. Carlson apparently was not sufficient to convince the Hearing Officer of the existence or detrimental effect of the alleged deportation rumors;[11] and upon a thorough examination of the record, we determine the Hearing Officer's conclusions not to be unreasonable. Since Heath Tec introduced no one else (e. g., an employee) to testify, and at that time did not offer an explanation therefor, the Officer and Board could have reasonably concluded that Heath Tec did not establish *prima facie* grounds for setting aside the election.

■ Had this court been called upon originally to pass on the merits of this argument, we might well have set aside the election, since the claims of Heath Tec, although not fully substantiated, certainly cast some doubt on the existence of true laboratory conditions at the plant. However, mere disagreement with the ultimate conclusion of the Board is not the standard for review.[12] In our opinion, the record does contain substantial evidence sufficient to sustain the Board's conclusion.

Accordingly, the petition is GRANTED, and the order of the Board will be ENFORCED.

MERRILL, Circuit Judge, concurring:

I concur in Judge Nielsen's opinion but reach his part II result by a slightly different route. In my view the Hearing Officer was relieved of any duty to make an inde-

*Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *accord, Bayside Enterprises, Inc. v. N.L.R.B.*, 429 U.S. 298, 303, 97 S.Ct. 576, 581, 50 L.Ed.2d 494 (1977).

pendent evaluation of privilege by Heath Tec's failure to attempt to meet its evidentiary needs without resort to privileged testimony. No showing of testimonial need on the part of Heath Tec having been made, there was nothing against which the Hearing Officer could weigh the importance of preserving the confidentiality of investigative files.