NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MIKE YUROSEK & SONS,
INC:, Respondent.

No. 77–1775.

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1979.

Rehearing Denied May 3, 1979.

662

Richard Brooks (argued), Washington, D. C., for petitioner.

Michael B. Roger (argued) of Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for Butchers Union Local 193.

Morgan, Lewis & Bockius, Washington, D. C., for respondent.

* Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation.

Before MERRILL and KENNEDY, Circuit Judges, and BARTELS,* District Judge.

KENNEDY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order holding a company in violation of sections 8(a)(1) & (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (5), for refusing to bargain with the union certified by the Board after the supervised election. The company, Mike Yurosek & Sons, Inc., refused to bargain because of alleged irregularities in the representation election. The Board held an evidentiary hearing to evaluate two objections made by the company and found that neither had merit. There is substantial evidence to support the Board's findings and we rule that the Board's order must be enforced.

The company operates in the central valley of California where it farms, processes, packs, and sells vegetables. The election in question was held to determine if the employees of the company's Lamont packing shed desired representation by the union, Butcher's Union Local 193 of the Amalgamated Cutters and Butcher Workmen of North America, AFL–CIO. The vote was 132 in favor of the union and 97 against.[1]

At its hearing, the Board considered company charges that two separate incidents during the pre-election campaign so tainted the election that the employees were denied free choice. The first and most substantial charge was that misrepresentations were made to the effect that if the employees did not vote in favor of the union, the Immigration and Naturalization Service would be informed of the names of any illegal aliens who were members of the employees'. bargaining unit. There is little doubt that the subject of possible Immigration and Naturalization Service investigation was discussed by the employees during the election campaign, one of the occasions being in a

1. Challenges to twenty-eight ballots were not resolved because the outcome would remain unaffected.

group of 25 or 30 employees walking together to work. Beyond this, however, the contents of this and other rumors are confused and the evidence is in conflict as to who was repeating them. There was at least some evidence of a conflicting rumor, to the effect that an Immigration and Naturalization Service investigation would be avoided by defeating the union.

While there were creditable witnesses who testified that pro-union employees warned that immigration inspectors would appear if there were a union loss, at least two union members contradicted that claim and a member of the union organizing committee told employees that the rumors were unfounded. Finally, there was testimony that at least one union officer denied that the union had any intent to expose illegal aliens.

■ The Board found that the union could not be charged with circulating the rumor. One factor in determining whether misrepresentations are likely to have had a significant effect on the outcome of an election is whether the statements in question were made or adopted by the union. If the statements are not properly attributed to the union, there generally is less likelihood that they affected the outcome. *NLRB v. Aaron Brothers Corp.,* 563 F.2d 409, 412 (9th Cir. 1977). This is simply an application of the general rule that "where the source of the questionable conduct is not the union or the employer . . . the Board and courts are especially hesitant to set aside an election." *NLRB v. Heath Tec Division,* 566 F.2d 1367, 1372 (9th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978). Where some members of the bargaining unit are aliens, we do not find it surprising that rumors might circulate concerning potential government investigation of those whose lawful status in this country is open to some question. One function of elections is to permit information to circulate in a noncoercive setting, for examination and comment. Here there was some evidence that the union heard the rumor and clarified its position on the issue. Where a free election is rendered impossible

by misrepresentation, threats or coercion, the election must be set aside. *Cross Baking Company v. NLRB,* 453 F.2d 1346, 1348 (1st Cir. 1971); *NLRB v. Urban Telephone Corporation,* 499 F.2d 239, 242 (7th Cir. 1974). While there were statements made by some of the employees which if attributable to the union would create an atmosphere sufficient to chill the freedom of their choice, there was insufficient evidence in this case to link those statements directly to the union or its agents. Although the administrative law judge found otherwise, we conclude that the Board's determination is supported by substantial evidence and accordingly should not be set aside. *NLRB v. United Insurance Co. of America,* 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). The record does not establish, as a matter of law, that the freedom of choice of the employees was significantly impaired by the representations that were made.

■ The employer argues further that the election was tainted by statements made to the employees that the union initiation fee would be reduced if the employees signed authorization cards prior to the election. Testimony on this point, however, was in conflict and the Board was entitled to believe testimony of those witnesses, including the union president, who testified that the employees were specifically advised that any reduction in initiation fees would be available to all those signing an authorization card prior to execution of the collective bargaining agreement. That fee structure does not violate the Act. *NLRB v. Aaron Brothers Corp., supra* at 412–13; *see NLRB v. Savair Mfg. Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973).

Accordingly, the petition for enforcement of the order is granted.