TUF–FLEX GLASS, a part of Libbey-Owens-Ford Company, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Miscellaneous, Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice, Paper and Related Clerical and Production Employees Union, Local 781, Intervening-Respondent.

No. 82–3024.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1983.

Decided Aug. 12, 1983.

R. Clay Bennett, Matkov, Griffin, Parson, Salzman & Madoff, Chicago, Ill., for petitioner.

Elinor Stillman, Elliott Moore, N.L.R.B., Washington, D.C., for respondent.

Edwin H. Benn, Asher, Goodstein, Pavalen, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for intervening-respondent.

Before WOOD and CUDAHY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner Tuf-Flex Glass seeks review of the National Labor Relations Board's finding that Tuf-Flex unlawfully refused to bargain with the intervenor union, following its certification, in violation of Section 8(a)(5) of the National Labor Relations Act; the respondent Board has cross-petitioned for enforcement of its concomitant order directing Tuf-Flex to bargain with the union and to provide certain requested information and to post an appropriate notice. The primary issue raised on appeal is whether there was substantial evidence in the record permitting the Board to conclude that certain threats made in the course of a union election campaign did not result in an impermissibly coercive voting atmosphere. We agree with the Board's finding and grant enforcement of its order in full.

I.

The underlying controversy began in March, 1981, when the union filed a repre-

* The Honorable Anthony J. Celebrezze, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

sentation petition seeking certification as the collective bargaining representative of the twenty-five production and maintenance workers employed at Tuf-Flex's Elmhurst, Illinois facility which manufactures tempered architectural safety glass. In April, a secret ballot election was conducted by the Board, and the union won by a vote of 14 to 8. Tuf-Flex, however, filed timely objections to the election, alleging that the union had unlawfully threatened employees with reprisals for failing to vote in the union's favor, thus coercing them into voting for the union. The Board's regional director investigated the objections, and in May recommended that the objections be overruled and the union certified as the bargaining representative. The Board, however, directed an evidentiary hearing to explore the existence, nature, origin and effects of the alleged threats.

In November, 1981, that proceeding was held. At the hearing, numerous versions of the alleged events were set forth even by the same witnesses and, accordingly, the hearing officer deemed it necessary to make certain credibility determinations as part of his findings. After doing so, the hearing officer found that the credible testimony established that at least two weeks prior to the election, one employee, Salvador Arias, told another employee, Pedro Sanchez, to tell yet a third employee, Jose Gutierrez, that if Gutierrez did not vote for the union and tell other employees to vote for the union, Arias would file a "complaint" (whose nature was never specified) against Gutierrez concerning the latter's admitted involvement in an incident more than a year earlier in which he acted as an intermediary between a company "leadman" and two job applicants who paid the leadman money in order to obtain employment with Tuf-Flex. Arias, the hearing officer found, subsequently made the same statement directly to Gutierrez, and Sanchez later repeated to Gutierrez the conversation between Sanchez and Arias but, "because of Sanchez's fears at that time," added his own gloss that Arias might "hurt" Gutierrez or his family. The hearing officer also found that Gutierrez related his conversation with Arias to another employee, Florentino Villalpando, and that on the day of the election, Sanchez, Gutierrez and Villalpando told four employees to vote for the union, but did not give the employees a reason for doing so. These employees testified that they were in no way threatened and one stated that he had responded to this overture by noting that the vote was secret and his decision a personal one.

Prior to assessing whether these events created a level of coercion sufficient to invalidate the election, the hearing officer undertook to determine whether Arias acted as an agent of the union and thus whether his threat should be deemed attributable to the union. Noting that the credible testimony established that Arias was the employee who first contacted the union to initiate the organizing campaign, that employees referred to Arias as "the union man" since he was the most vocal union supporter at the plant, that Arias aided the union organizer, Miguel Travieso, and was used by him to "get the news" to Tuf-Flex employees, that Arias passed out union authorization cards and campaign literature on company premises, and that at a union meeting Arias sat next to Travieso, but that Arias was never promised nor did he receive any monetary or other benefit from the union and that Travieso was in charge of the union's organizing campaign (e.g., Travieso telephoned and visited employees' homes, distributed leaflets at the plant, obtained authorizations and signatures, distributed his business card to several employees and solicited further questions, was present in official capacity at several union organization meetings, and was seen by employees at the plant and was known to be a union staff member), the hearing officer concluded that Arias was not an agent of the union and had no actual or apparent authority to speak on the union's behalf. The hearing officer reasoned that mere vocal support for the union and encouragement of employees to attend union meetings could not confer spokesman status to a union supporter, and that, in the case before him, any impression of agency that

Arias may have created was overcome by employees' testimony that they knew Travieso was the union's representative and that Travieso was visible to employees at the plant and at organizing meetings. The hearing officer thus distinguished the case before him from such cases as *Beaird-Poulan Division, Emerson Electric Co.,* 247 NLRB No. 180 (1980) and *NLRB v. Georgetown Dress Corporation,* 537 F.2d 1239 (4th Cir.1976), where an in-plant organizing committee composed of employees was the primary or sole intermediary between the employees and the union and thus the employees were deemed to have agency status.

Having determined that Arias' statements were not to be considered those of a union agent, the hearing officer then inquired whether Arias' "conduct as a rank-and-file employee was so aggravated as to create a general atmosphere of coercion and fear of reprisal so as to interfere with employee free choice in the election," reflecting that a somewhat looser standard is applied by the Board and the courts in assessing the impact of conduct of rank-and-file employees, as opposed to that of union agents. *Certain-Teed Products Corp. v. NLRB,* 562 F.2d 500, 510–511 n. 5 (7th Cir.1977); *Steak House Meat Company,* 206 NLRB 28, 29 (1973). The hearing officer found that Arias' threat to file an unspecified "complaint" was not "sufficiently substantial" to create a "general environment of fear and reprisal," since the meaning and consequences of the threatened complaint-filing were unclear and in any event the complaint would be a peaceful, legal action rather than one involving violence or physical harm, thus making the case analogous to that presented in *Beaird-Poulan Division, Emerson Electric Co.,* 247 NLRB No. 180 (1980) and *Mike Yurosek & Sons, Inc.,* 225 NLRB 148 (1978), *enforced,* 597 F.2d 661 (9th Cir.1979), *cert. denied,* 102 LRRM 2360 (1979), where threats involving the filing of charges against employees or the initiation of immigration service investigations

against illegal aliens in the bargaining unit were found insufficient to warrant the vitiation of election results. Thus, having determined that the election was not impermissibly tainted by coercion, the hearing officer issued a report recommending that Tuf-Flex's objections be overruled.

Tuf-Flex took exception to the hearing officer's report and further urged the Board to overturn the election on the new and independent basis that two allegedly "supervisory" employees had undertaken pro-union activity. In June, 1982, the Board issued a supplemental decision adopting the hearing officer's recommendations and certifying the union as the bargaining unit representative; it also required the company to commence collective bargaining negotiations and provide the union with certain information and post appropriate notice. In July, Tuf-Flex refused to comply with the order on the basis that the Board's certification of the union was improper; the union countered with an unfair labor practice charge alleging that Tuf-Flex was unlawfully refusing to bargain. The Board's regional director issued a complaint charging Tuf-Flex with violating Section 8(a)(5) of the NLRA. After transferring the case to itself, the Board concluded in December, 1982 that Tuf-Flex unlawfully refused to bargain, noting that all of the issues before it were, or could have been, raised in the prior representation hearing, and that no new evidence had been presented requiring reexamination of the Board's earlier representation decision. Accordingly, the Board directed the company to bargain with the union, provide the requested information, and post appropriate notice. Tuf-Flex seeks review of that order, and the Board has cross-petitioned for its enforcement.

## II.

■ Before confronting the heart of this case—the legal significance of Arias' threat[1]—we must address the apparent

---

1. Tuf-Flex also urges this court to review the Board's approval of the representation election on the basis, first suggested in the company's

exception to the hearing officer's report, that two of Tuf-Flex's statutory supervisory employees engaged in pro-union conduct. Al-

contention by Tuf-Flex that the facts were erroneously found by the hearing officer. For example, Tuf-Flex represented in its brief that, in contrast to the hearing officer's findings, the evidence showed that Arias threatened to "hit" Gutierrez or "hurt" his family, that Arias threatened that the union, and not Arias, would file the "complaint," that Sanchez conveyed Arias' "complaint" threat not only to Gutierrez but to four other employees, that Gutierrez attempted to "compel" or "coerce" employees to vote for the union, and, with respect to the agency question, that Arias stated to his fellow employees that he would be "in charge" if the union won the election.

We note at the outset that each of these factual determinations explicitly turned on the hearing officer's assessment of witness credibility and demeanor, and that such determinations may not be overturned absent the most extraordinary circumstances such as utter disregard for sworn testimony or the acceptance of testimony which is on its face incredible. *NLRB v. Berger Transfer & Storage Co.,* 678 F.2d 679, 687 (7th Cir.1982); *Certain-Teed Products Corp. v. NLRB,* 562 F.2d 500, 505 (7th Cir.1977). Here, the hearing examiner undertook the painstaking and, given the inconsistency of narratives emanating in some cases from the very same witness, exasperating task of winnowing the most likely version of the pre-election events. We find his reasoning and conclusions both rigorous and sound.

For example, with respect to the actual content of Arias' threat, the hearing officer was confronted with numerous and conflicting versions from Sanchez and Gutierrez, in only some of which they indicated

that Arias threatened to "hit" or "hurt" Gutierrez or his family or that the *union* would be the party to file the complaint. In particular, the hearing officer noted that Sanchez's testimony regarding the purportedly violent portion of Arias' threat was unreliable as he had a tendency to convey impressions rather than verbatim recollections, and that the testimony that Arias said the *union* would file the complaint was too "confusing and imprecise" to warrant credulity. Likewise, the hearing officer found, there was not a shred of evidence that the existence or content of the Arias threat was conveyed to other employees beyond Sanchez, Gutierrez and Florentino Villalpando or that the threats were used to press employees into voting in favor of the union; indeed, each of the allegedly threat-compelled employees testified that, although they were told to vote for the union by Sanchez, Gutierrez and Villalpando, no reason for such a vote was given and no threat was made in connection with these voting instructions. With respect to Arias' alleged remark that he would be "in charge" upon the union's election, the hearing officer discredited the evidence supporting its occurrence in large part because the only witness affirmatively attesting to it admitted on cross-examination that he did not pay attention at the meeting where the remark was allegedly made, and that he did not actually remember what Arias said there. Tuf-Flex's other implicit challenges to the hearing officer's factual findings, like these, are merely attempts to disturb the well-considered reconstruction of events arrived at through the making of difficult credibility assessments from numerous conflicting narratives and the observation of

---

though the supervisory status of these two employees was first raised by the union before the hearing officer, the specific contention that such supervisory status produced independent grounds for nullifying the election was urged for the first time before the Board nearly a year after the election, in clear violation of the Board's procedures requiring that objections be filed within five days after the election, 29 C.F.R. § 102.69, except where the previously unalleged misconduct is newly discovered or information about it previously unavailable.

*Burns v. International Securities Service, Inc.,* 256 NLRB No. 165 (1981); *Parks Food Service,* 235 NLRB 1410 (1978). Thus, the Board properly refused to consider this contention, as it was raised in an untimely fashion and no averment was made that evidence of the supervisory misconduct was either newly discovered or previously unavailable. We must therefore decline to consider this contention on appeal. *NLRB v. Newton-New Haven Co.,* 506 F.2d 1035, 1038 (2d Cir.1974); *Singer Co. v. NLRB,* 429 F.2d 172, 181 (8th Cir.1970).

witness demeanor. The examination of this record leaves us convinced that the hearing officer's reconstruction was amply supported by substantial evidence on the record as a whole.

### III.

■ Turning to the legal effect of Arias' threats on the integrity of the election atmosphere, we first express our agreement with the hearing officer's and the Board's findings that Arias was not clothed by the union with either actual or apparent authority, and thus his threats were properly not imputed to the union through traditional agency principles. The test of agency in the union election context is stringent, involving a demonstration that the *union* placed the employee in a position where he appears to act as its representative. *Certain-Teed Products Corp. v. NLRB,* 562 F.2d 500, 509–510 n. 5 (7th Cir.1977); *Beaird-Poulan Division, Emerson Electric Co. v. NLRB,* 649 F.2d 589, 594 (8th Cir.1981); it is not enough that the employee unilaterally claims representative status, *Firestone Steel Products Company,* 235 NLRB 548, 550 (1978); 1 Restatement (Second) of Agency § 8 (1958). While Arias was known as the most active "union man" and was used as a conduit to "get the news to employees," passing out union literature and authorization cards, substantial evidence established that Tuf-Flex employees were well aware that Miguel Travieso was the union's representative in the campaign, as he had communicated with and solicited questions from the employees in person at home and outside the factory and had conducted and keynoted several union organizational meetings. Thus, unlike in *Pastoor Brothers Co.,* 223 NLRB 451, 453 (1976) and *Local 340, International Brotherhood of Operative Potters,* 175 NLRB 756, 759 (1969), relied upon by Tuf-Flex, where the employees, respectively, took a dominant campaign role (arranging union meetings, drafting campaign literature, serving as union election observers), or were the sole union contact with employees, here there is an absence of evidence of conduct or non-conduct by the union sufficient to signal to employees that Arias was anything more than an enthusiastic supporter helping a full-time organizer. Moreover, it is not even contended here that the union had knowledge of, much less affirmed, Arias' interpersonal threats. *See Certain-Teed Products Corp.,* 562 F.2d at 511 n. 5. *Compare NLRB v. Urban Telephone Corp.,* 499 F.2d 239, 243 (7th Cir.1974). Thus, we agree with the hearing examiner that Arias' statements are not attributable to the union under either of the alternative agency theories of apparent authority or ratification.

■ Having thus found Arias' statements to be without the union's implied imprimatur, we must give less weight to these utterances in determining whether the hearing officer properly found the election to be valid. *Certain-Teed Products Corp.,* 562 F.2d at 510–11; *NLRB v. Urban Telephone Corporation,* 499 F.2d 239, 242 (7th Cir.1974). Under such circumstances, our touchstone for analysis is whether Arias' isolated threat created such an atmosphere of fear and reprisal that the rational, uncoerced selection of a bargaining representative was rendered impossible. *Beaird-Poulan Division, Emerson Electric Co. v. NLRB,* 649 F.2d 589, 594 (8th Cir. 1981); *Bush Hog, Inc. v. NLRB,* 420 F.2d 1266, 1269 (5th Cir.1969).

■ No such pervasive fear of reprisal crippling free choice was present here. The credited evidence showed merely collateral pressure applied to a single individual, Gutierrez, through the threat of the activation of a legal and peaceful channel of redress for conduct in which Gutierrez admittedly participated; the evidence also showed that two other employees, Sanchez and Villalpando, learned of this threat as conduit and confidant, respectively. There is no evidence showing that any other employee in the twenty-five-member bargaining unit knew of the threat, much less that they felt coerced or threatened in any way by those who knew of the threat; to the contrary, the employees testified that they had not been threatened and one even stated that he had responded to the partisan overtures

of Gutierrez, Villalpando and Sanchez by noting that the ballot was secret and his choice a personal matter. These are hardly the indicia of pervasive coercion destroying the employee electorate's freedom of choice, as in *NLRB v. Urban Telephone Corp.*, 499 F.2d 239, 244 (7th Cir.1974) and *Sonoco of Puerto Rico, Inc.*, 210 NLRB 493 (1974), where there were numerous threats of physical violence made to employees contingent upon the union's loss. Instead, this case is closer to *NLRB v. Mike Yurosek & Sons, Inc.*, 597 F.2d 661, 662 (9th Cir.1979), where there was set in motion a widespread rumor that upon the defeat of the union, the Immigration and Naturalization Service would be alerted to the presence of illegal alien employees; *Beaird-Poulan Division, Emerson Electric Co.*, 247 NLRB No. 180 (1980), *aff'd* 649 F.2d 589, 593 (8th Cir.1981), where, *inter alia*, one employee threatened to invoke internal union sanctions against another employee because the latter has ceased attending union meetings; and *Fones v. NLRB*, 431 F.2d 417, 419–20 (5th Cir.1970), where employees were threatened with the exposure of their extramarital liaisons; in all three cases, the threats were found insufficient alone or in combination with others to irretrievably pollute the otherwise unfettered electoral atmosphere. Especially where, as here, there was positive testimony that the pro-union campaign statements by those who knew of Arias' peaceful and contingent legal action contained no reference to that action and were perceived subjectively as noncoercive, a similar result is required.

### IV.

Tuf-Flex alternatively contends that enforcement of the Board's order should be denied on the basis that the hearing officer violated Tuf-Flex's due process rights by permitting the allegedly poorly translated affidavits of five employees taken by the Board to be used by the union in cross-examining company witnesses, by requiring Tuf-Flex to make available for union cross-examination purposes affidavits and statements taken from employees by Tuf-Flex's attorneys (allegedly in violation of the at-

torney-client privilege), and by refusing to permit Tuf-Flex to recall five witnesses and call two new witnesses at the conclusion of the union's case to testify at greater length concerning union organizer Miguel Travieso's role in the Tuf-Flex campaign. These contentions are without merit.

■ With respect to the affidavits and statements, Tuf-Flex has failed to meet its threshold burden of establishing that prejudice resulted from any error involved in their production. *Dodson v. National Transportation Safety Board*, 644 F.2d 647, 652 (7th Cir.1981); *NLRB v. Health Tec Division/San Francisco*, 566 F.2d 1367, 1371–72 (9th Cir.), *cert. denied*, 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978). Here, no prejudice could have resulted, since the hearing officer and the Board simply did not rely on the affidavits in resolving any issue in the case. For example, none of the Board affidavits were ultimately relied upon for substantive or credibility purposes: the hearing officer specifically gave "no weight" to Arias' affidavit; the Board stated in its adoption of the hearing officer's findings discrediting parts of the Sanchez's and Gutierrez's testimony that it did not rely on their affidavits, but rather on their demeanor, and inconsistent and confusing testimony; and the testimony of Marquez, Jesus and Lorenzo Villalpando, and Reyes was directly credited without reliance on the affidavits. Similarly, none of the company's affidavits compelled under the contested order had any impact on the hearing officer's credibility determinations, as he credited the testimony of most of these witnesses. With respect to the testimony of two witnesses he did not credit, the impeaching affidavits were made available to the union through an alternative route: their submission by Tuf-Flex in conjunction with the company's filing of objections and the production of these documents by the regional director at the hearing without company objection. Failing, then, to demonstrate any prejudicial impact of the production of the compelled affidavits and statements, Tuf-Flex is not entitled to non-enforcement on the

basis of possible procedural error committed thereby.

 We also believe that the hearing officer's refusal to permit Tuf-Flex to recall five witnesses and two new witnesses at the close of the union's case to expand on the previously explored theme of the relative prominence of Arias and Travieso in the organizing campaign did not constitute a clear abuse of discretion or result in any prejudice to the company. *NLRB v. Doral Building Services, Inc.,* 666 F.2d 432, 435 (9th Cir.1982); *Dodson v. National Transportation Safety Board,* 644 F.2d 647, 652 (7th Cir.1981); *Barrus Construction Company v. NLRB,* 483 F.2d 191, 195–97 (4th Cir.1973), as such testimony was cumulative. Prior to the point at which the testimony was barred, the issue of Arias' authority and Travieso's prominence in the campaign had been explored exhaustively and formed a central issue in the hearing. Indeed, five of the witnesses sought to be requestioned had already testified precisely to their view of Travieso's activities, and there was no offer of proof that they or the two new witnesses would discuss any unexplored evidence of those activities; Tuf-Flex's counsel conceded that the information could have been proffered as part of its case in chief. While it is true that Travieso himself testified for the first time in the union's presentation, nothing in his testimony created inconsistencies with the employees' earlier testimony concerning his role. Because Tuf-Flex failed to identify any essentially new matters raised by the union's case, the hearing officer was well within his discretion in forbidding the company from offering more direct evidence ostensibly in rebuttal. *Page v. Barko Hydraulics,* 673 F.2d 134, 135–140 (5th Cir.1982); 6 J. Wigmore, Evidence § 1873 (Chadbourn Rev.Ed. 1976).

## V.

 The intervenor union has moved that this court grant it attorney's fees against Tuf-Flex pursuant to 28 U.S.C. § 1927 as a punitive gesture directed against the company's allegedly unreasonable and vexatious multiplication of the proceedings. The vexation alleged stems from Tuf-Flex's failure to accurately note in its brief the true nature and consequences of the hearing officer's rulings with respect to the affidavits discussed in *IV, supra,* and its failure to note that many of the assertions contained in its statement of facts had been specifically discredited by the hearing officer, as discussed in *II, supra.* It is true that factual misrepresentation can form the basis for a punitive award, but generally this extraordinary sanction is only applied where the misrepresentation is responsible for preserving an otherwise meritless suit. *See, e.g., McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198, 202 (7th Cir.1983). While we do not look favorably upon the lack of candor of Tuf-Flex in failing to note explicitly that it was challenging certain credibility findings of the Board or to characterize more accurately the facts concerning the affidavit and rebuttal rulings, we think that such omissions do not warrant the award of fees where, as here, the *legal* basis of the company's *primary* objection to the election (*i.e.* the alleged coercion) was, if not ultimately convincing, at least plausible. *Overnite Transp. Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789, 795 (7th Cir.1983).

For the foregoing reasons, Tuf-Flex's petition for review of the National Labor Relations Board order directing it to bargain with the union and to provide requested information and post appropriate notice is denied and the Board's order is hereby enforced. The union's motion for attorney's fees is denied.

ENFORCED.