**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3927

_____

Deffenbaugh Industries, Inc.,         *

                                     *

      Petitioner,              *

                                     *  Petition for Review of the

          v.                *  Decision and Order of the

                                     *  National Labor Relations Board.

National Labor Relations Board,     *

                                     *

      Respondent,           *

                                     *

General Drivers & Helpers Union,    *
Local No. 554 Affiliated with        *
International Brotherhood of Teamsters, *
Chauffers, Warehousemen and Helpers  *
of America, AFL-CIO,           *

                                     *

      Intervenor on Appeal.     *

_____

No. 96-4160

_____

Deffenbaugh Industries, Inc.,         *

                                     *

      Respondent,           *

                                     *  Cross-Application for Enforcement

          v.                *  of an Order of the National Labor

                                     *  Relations Board.

National Labor Relations Board,     *

                                     *

      Petitioner,            *

                                     *

General Drivers & Helpers Union,          *
Local No. 54 Affiliated with             *
International Brotherhood of              *
Teamsters, Chauffeurs, Warehousemen      *
and Helpers of America, AFL-CIO,         *
                                         *
          Intervenor on Appeal.          *

_____

Submitted: May 21, 1997
Filed: August 11, 1997

_____

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.

_____

MURPHY, Circuit Judge.

The National Labor Relations Board found that Deffenbaugh Industries, Inc. had committed unfair labor practices by refusing to bargain with and furnish relevant information to the General Drivers & Helpers Union, Local No. 554, the collective bargaining representative of some of its employees. After the board issued an order requiring Deffenbaugh to bargain with the union, provide it necessary information, and post a notice to that effect, Deffenbaugh petitioned for review, requesting that the board's order be completely set aside. The board in turn filed a cross-application seeking enforcement of its order. We deny the petition and grant enforcement of the board's order.

Deffenbaugh operates a trash and waste collection and removal business in Omaha, Nebraska. A petition requesting a union representation election was filed with the board by the union in October 1995, and a secret-ballot election was held on November 30, 1995. Of the approximately 134 employees eligible to vote, fifty-eight

voted in favor of representation and fifty voted against it, with one void ballot and two challenged ballots that would not have affected the outcome of the election. Deffenbaugh contested the results of the election, charging among other things that it had been influenced by threats of physical harm and the possible arrival of the Immigration and Naturalization Service (INS). The board scheduled a representation proceeding at which Deffenbaugh's challenges to the election were considered.

The evidence presented at the proceeding showed that statements had been made to a few Hispanic employees at Deffenbaugh that the union might "bring in" the INS if it lost the election and that rumors about this possibility had circulated among Hispanic employees. There was no evidence that the union made any of the statements or started the rumors, and there was no evidence of any physical threats or vandalism in the pre-election period or that the INS ever visited the company before the election. One Deffenbaugh employee who worked as a helper, Ignacio Resendiz, testified that the driver of a truck in which he had been riding over a month before the election had told him about the benefits of the union and the possibility that the INS might arrive at the company if the union were to lose the election. Resendiz identified the driver only as "Mike" and said Mike had neither held himself out as a union representative nor said that he spoke for it. Resendiz did not report the statement to Deffenbaugh management or his supervisors and only told one other employee about it.

Other employees reported hearing statements from unidentified sources about the election. Miguel Villa, who was ineligible to vote, reported that an unidentified "American" employee had told him Hispanics should vote for the union because they would get more benefits and that the INS would be "brought in" if the union lost.[1] Villa

---

[1]Villa also reported that Anthony Horton, an employee who supported the union, went to his home and threatened him in English with deportation if he did not vote for

also stated that another employee had told him about hearing a similar rumor, but he did not tell anyone else about these statements. Domingo Diaz, who was an eligible voter, was told by an unidentified black driver sometime in October that if the union lost, "there would be the possibility they would bring in the Immigration." Diaz told two or three other employees about this statement.

Several Hispanic employees heard rumors before the election that the INS might be called if the union lost, but they testified that they did not know the source of the rumors. A few employees said that there were many discussions about the rumors among the Hispanic employees and that they participated in some of the discussions. In contrast, Diaz testified that the discussions about the rumors were not frequent, and both he and Villa said that they did not participate in them.

There was also conflicting evidence over the reaction of the Hispanic employees to the rumors. Some employees reported that a few Hispanic employees appeared concerned, and Villa said he heard that two Hispanic employees might change their votes because of the rumors. Others testified that the rumors did not concern them and that they and others did not have problems with "Immigration." Resendiz said the rumor he had heard was that Villa and his family would be turned in to the INS if the union lost, but that the rumor did not concern him. No employee asked the union about the rumors or statements, and the evidence indicated the union was not aware of them. There also was no approach to Deffenbaugh management or supervisors about the rumors and statements before the election.

---

it. Horton denied threatening Villa, and Villa did not relay this threat to any other employee at Deffenbaugh. The hearing officer did not credit Villa's testimony, and Deffenbaugh has not challenged her credibility determination. She indicated that she had considered Villa's ineligibility to vote in the election, his apparent difficulty in understanding English, and inconsistencies and contradictions in his testimony. Such a determination is entitled to deference unless it is shocking to the conscience which this is not. See York Prods., Inc. v. NLRB, 881 F.2d 542, 544 (8th Cir. 1989).

The hearing officer found that there had not been a coercive or intimidating atmosphere which interfered with the employees' free choice. She found that there were no incidents of vandalism or threats of physical violence before the election and that the statements and rumors were not made by union representatives or agents and therefore should be examined under the third party standard in Westwood Horizons Hotel, 270 N.L.R.B. 802 (1984). She determined that the statement made to Resendiz was only the repetition of hearsay and speculation and that the other anonymous statements and rumors were disseminated without accreditation to any individual or the union and that this characteristic made them less coercive. She found that they "[did] not create an atmosphere of fear and coercion among the employees" and recommended that the union be certified.

The board adopted the hearing officer's findings and recommendations because the statements had not been made close in time to the election or widely disseminated or rejuvenated before the election and the seriousness of the threats and rumors was less than in cases setting aside elections. The board certified the union, but Deffenbaugh refused to bargain with it or to provide it requested information for collective bargaining.

The board's general counsel then issued an unfair labor practice complaint, alleging that Deffenbaugh's refusal to bargain or to provide requested relevant bargaining information violated sections 8(a)(1) and (a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (a)(5). Deffenbaugh admitted the factual allegations, but asserted that it had not violated the Act because the union's certification was not valid.[2] The general counsel moved for summary judgment, and the board granted it, finding that Deffenbaugh had raised no new evidence or special

---

[2]The board's certification of the union is not subject to direct judicial review, but an employer can assert its objections to the certification as a defense in an unfair labor practice proceeding over which the federal courts have jurisdiction. Rosewood Care Ctr., Inc. v. NLRB, 83 F.3d 1028, 1031 n.1 (8th Cir. 1996)

circumstances requiring reexamination of the certification and that all of the certification issues had been or could have been litigated in the representation proceeding on the election. The board issued an order directing Deffenbaugh to cease refusing to bargain with the union, to furnish necessary and relevant information, to bargain upon request, and to post a remedial notice.

Deffenbaugh now petitions this court to set aside the board's unfair labor practice decision and order. Deffenbaugh does not contest the factual findings of the board, including those related to credibility, or argue that the remedy the board ordered was outside its discretion, but contends that the union should not have been certified because third party threats interfered with the election so that the result does not reflect the employees' free choice. It asserts that this situation fits the factors in Westwood for setting aside a representation election and is similar to the misconduct in Crown Coach Corp., 284 N.L.R.B. 1010 (1987). Deffenbaugh claims the threats here were serious, widely disseminated, and rejuvenated near election day. These facts, together with the closeness of the election, should lead the court to set aside the board's decision and order and direct the board on remand to conduct a new election.

The board responds that it found on the evidence that there was no atmosphere of fear or intimidation and no reason to set aside the election and that these findings are supported by substantial evidence. The intervening union argues it would be unfair to hold it responsible for unaccredited and anonymous statements and rumors; such testimony should not be credited simply because it was unrebutted since it is impossible to rebut statements from anonymous individuals. The union asserts there is substantial evidence in the record supporting the board's findings that only third parties were involved and that the union was unaware of the statements and rumors. There is a strong presumption that an election conducted by the board reflects the employees' true desires regarding representation. NLRB v. Hood Furniture Mfg. Co., 941 F.2d 325, 328 (5th Cir. 1991) (citations omitted). "Representation elections are not to be set aside lightly." Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258,

261 (8th Cir. 1993) (citing Beaird-Poulan Div., Emerson Elec. Co. v. NLRB, 649 F.2d 589, 592 (8th Cir. 1981)). A party challenging an election carries the heavy burden of proving there were improprieties which interfered with the employees' free choice to such an extent that they materially affected the outcome of the election. NLRB v. Mattison Mach. Works, 365 U.S. 123, 123-24 (1961) (per curiam); Millard, 2 F.3d at 261 (quoting Beaird-Poulan, 649 F.2d at 592).

Congress has designated the board as the expert in representation matters, and in reviewing the board's certification determination, we consider whether it "reasonably exercised the 'wide degree of discretion' vested in it by Congress." NLRB v. Monark Boat Co., 800 F.2d 191, 193 (8th Cir. 1986) (quoting Beaird-Poulan, 649 F.2d at 592). An order of the board will be enforced if it correctly applied the law and if substantial evidence in the record supports its findings. Millard, 2 F.3d at 262 (quotation and citations omitted).

It is recognized that a "certain measure of bad feeling and even hostile behavior is probably inevitable in any hotly contested election," and an election will not be set aside because of third party misconduct unless it is shown that free choice was vitiated. Nabisco, Inc. v. NLRB, 738 F.2d 955, 957 (8th Cir. 1984). The challenging party must prove that the misconduct created "an atmosphere of fear and reprisal such as to render a free expression of choice impossible." Monark Boat Co., 713 F.2d 355, 360 (8th Cir. 1983) (citations omitted); see also Westwood, 270 N.L.R.B. 802, Less weight is given to third party misconduct than to party misconduct because unions and employers cannot prevent misdeeds by persons over whom they have no control, Millard, 2 F.3d at 261 (citations omitted), and conduct which is not attributed to the union or employer is less likely to affect the outcome of an election. See NLRB v. Mike Yurosek & Sons, Inc., 597 F.2d 661, 663 (9th Cir. 1979) (citation omitted). Third party threats and rumors of deportation do not necessarily invalidate an election. See NLRB v. Eskimo Radiator Mfg. Co., 688 F.2d 1315, 1319 (9th Cir. 1982) (per curiam) (citations omitted); Q.B. Rebuilders, Inc., 312 N.L.R.B. 1141 (1993).

There are a number of factors the board should consider when deciding whether an election should be set aside because of third party misconduct: the seriousness of the threats, including whether they encompassed the entire bargaining unit and were widely disseminated; whether the people making the threats were capable of carrying them out; whether it is likely employees acted in fear; and whether the threats were rejuvenated at or near the time of the election. Westwood, 270 N.L.R.B. 802. The closeness of the election may also be considered, but it is not the determining factor. Eskimo Radiator, 688 F.2d at 1317, 1319-20 (closeness of election is one factor in scrutinizing pre-election conduct but "not the controlling factor"; upholding seventy-three to seventy vote in favor of representation after finding rumors of deportation did not create atmosphere of fear and coercion); Rosewood Care Ctr., 83 F.3d 1028, 1032 (upholding twenty-six to twenty-four vote in favor of representation after determining that threats made to one eligible voter and one noneligible voter did not create atmosphere of fear and coercion); see also Crown Coach, 284 N.L.R.B. 1010 (election set aside because of threats and vandalism during campaign even though there was a wide margin in voting; 411 employees in favor of representation and 280 against).

This case is very different from Crown Coach on which Deffenbaugh relies. In that case there was an environment permeated with vandalism and threats of deportation and violence, all aimed at a large proportion of the voting unit. Many prounion employees repeatedly made threats of deportation to Hispanic employees, who made up over sixty-five percent of the workforce. There were also numerous threats of physical injury and acts of vandalism throughout the pre-election period and on election day, and the threats were widely repeated among the employees. Rumors about what the union might do if it lost the election were so pervasive there that a group of twenty to thirty employees had approached Crown Coach management with their concerns.

A careful review of the record shows that Deffenbaugh did not meet its burden of proving that what occurred in this election made an expression of free choice

impossible. Deffenbaugh has not shown that the election environment was infused with coercion and intimidation. The board found, and Deffenbaugh does not contest, that there were no threats of physical violence and no vandalism or harassment in the pre-election period. Some statements about the INS were made, but far from the election date and not widely disseminated. Less weight is given to the impact of such statements. Westwood, 270 N.L.R.B. 802. The union was not responsible for the statements, did not control the people who made them, and was not aware they had been made. The two statements to eligible voters occurred over a month before the election, were repeated to only a few other employees, and were made while employees discussed the union and its benefits. See Nabisco, 738 F.2d at 957. The one other mention of the INS could not have affected the election since it was made to an employee who was not an eligible voter and did not tell anyone about it.

Most of Deffenbaugh's objections to the election relate to the unaccredited and anonymous rumors which circulated among the Hispanic employees, but it has not shown that because of these rumors free choice was impossible. The union was not responsible for the rumors, did not control the people who started and repeated them, and was not aware of their circulation. The rumors concerned approximately fifteen percent of the electorate, but there was conflicting evidence over the amount of concern they caused. Several Hispanic employees testified that the rumors did not concern them and that they did not know the source of the rumors, and none of the Hispanic employees approached the union or Deffenbaugh management with any concerns about them. The INS did not visit Deffenbaugh during the pre-election period. Cf. Q.B. Rebuilders, 312 N.L.R.B. 1141. These unattributed rumors that the employees recognized were anonymous and unaccredited did not rejuvenate the isolated threats made over a month before the election. See Mike Yurosek, 597 F.2d at 663. Moreover, the results of the election were not extremely close since the vote was fifty-eight in favor of representation to fifty against. Deffenbaugh did not meet its burden of proving that the expression of free choice in this election was not possible.

It was for the board to make credibility determinations and to weigh the evidence in reviewing the election, York Prods., 881 F.2d at 544, 546 (quotation and citation omitted), and its order should be enforced if its findings are supported by substantial evidence and it correctly applied the law. NLRB v. Earle Inds., Inc., 999 F.2d 1268, 1272 (8th Cir. 1993). The board's findings here are supported by substantial evidence, and it did not err in concluding that the isolated misconduct and rumors in this otherwise clean election did not require the election to be set aside. Since Deffenbaugh has not shown the union should not have been certified and it admitted it refused to bargain with it and provide relevant information, the petition for review must be denied. The remedy the board fashioned is not outside its discretion, see Millard, 2 F.3d at 261, and the board is therefore entitled to enforcement of its order. Earle Inds., 999 F.2d at 1272.

For these reasons we deny the petition and grant enforcement of the board's order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-