**BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES et al., Appellants,**

v.

**NATIONAL MEDIATION BOARD et al., Appellees.**

No. 20606.

United States Court of Appeals District of Columbia Circuit.

Argued on Motion for Stay Dec. 8, 1966.

Decided Dec. 16, 1966.

Mr. James L. Highsaw, Jr., Washington, D. C., for appellants.

Mr. William A. Gershuny, Attorney, Department of Justice, with whom Messrs. Morton Hollander and Harland F. Leathers, Attorneys, Department of Justice were on the pleadings, for appellee National Mediation Board.

Mr. Herbert S. Thatcher, Washington, D. C., for appellee International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Before FAHY, BURGER and LEVENTHAL, Circuit Judges.

## ORDER

PER CURIAM.

This case came on for hearing on appellants' motion for stay pending appeal, and said motion was argued by counsel.

Upon consideration whereof, and for the reasons set forth in the opinion filed this day, it is

Ordered by the court that the aforesaid motion is denied.

LEVENTHAL, Circuit Judge.

This is a motion for a stay pending appeal from the dismissal for lack of jurisdiction of an action in the District Court commenced by the appellants Brotherhood of Railway and Steamship Clerks (hereafter the Clerks), et al. seeking to enjoin appellee National Mediation Board from proceeding with an election presently in progress.

The complaint makes the following allegations, which must be taken as true. Since 1946, appellant has been the certified representative of the craft or class of clerical, office and related employees of Pan American World Airways, Inc. In August of 1965 the International Brotherhood of Teamsters, also an appellee, and hereafter referred to as the Teamsters, filed an application with the Board claiming that the employees desired to be represented by the Teamsters. Acting pursuant to Section 2, Ninth of the Railway Labor Act [45 U.S.C. § 152, Ninth], the Board conducted an investigation of the Teamsters' application and in due course ordered that a representation election be conducted on the property of Pan American among the class of employees involved, by mail ballots to be mailed out on August 8, 1966, returnable on or before September 7, 1966.

Appellant Clerks decided to keep its name off the election ballot. As explained by counsel it sought in this way to resist the "raid" of the Teamsters, in the thought that under the Board's rules, the Teamsters could not supplant the Clerks unless more than half of the eligible employees cast a ballot. The Board's ballot contained the name of the Teamsters and a blank place for a write-in vote. While the election was in progress, appellant discovered that all eligible employees had been sent two forged communications urging them to "write in" the Clerks' name on the ballot. One purported to be a letter on the office stationery of, and signed by, Mr. George Meany, president of the AFL-CIO. The other purported to be a circular from the Clerks.

On August 25, 1966, appellant filed a petition with the Board calling the Board's attention to the fraud and forgery described above, and requesting the Board to investigate promptly these acts, and, pending the results of the investiga-

tion, to impound the ballots. On September 2, 1966, appellant called to the Board's attention another fraudulent letter to the same effect circulated in San Francisco, purportedly written and signed by the president of the San Francisco local of the Clerks. The Teamsters opposed appellant's petitions.

Appellant's prayer for impounding the ballots and investigation of the election [1] was granted when the Board, by letters dated October 6, 1966, notified the parties that at an executive session on October 4, it had decided to set aside the purported election and order a new election. The Board's letter stated:

Information had come to the Board's attention of sufficient gravity as to create a serious doubt whether the balloting in this case had been conducted in an atmosphere which would enable the employees of Pan American World Airways, Inc., to exercise a free choice concerning representation.

In a petition filed October 10, 1966, the Clerks requested, *inter alia,* that the Board hold in abeyance the second election until a free, fair and uncoerced election could be held. The petition embraces two thoughts: that the elapsed time was too short to eradicate the taint of the objectionable interferences with a free election, and that the only way the atmosphere could be cleared up was to wait until the Federal agencies investigating the situation determined who was responsible.

The petition was denied October 13. The Clerks presented a petition for reconsideration and oral argument (October 21) and a supporting memorandum (October 24). The Board then scheduled oral argument which was heard on October 31.

On November 2, 1966, the Board granted the petition for reconsideration,

but adhered to its decision to proceed with the second election. However, it rescheduled that election so as to validate ballots mailed between November 14 and December 12, 1966. The Board also ordered that a communication, reprinted in the Appendix hereto, be sent to all Pan American employees eligible to vote.

On November 10, appellants brought this action in the District Court. For convenience we defer recital of the grounds for relief. The relief sought included (1) a permanent injunction restraining the Board from holding the second election until proper steps are taken to insure that the taint of fraud and other improprieties invalidating the first election are not carried over to the second; and (2) a permanent injunction to prevent the Board from certifying anyone as a result of the election now in progress. A temporary injunction pendente lite was also sought.

The District Court on December 1 granted the motions of defendant Board and intervenor Teamsters to dismiss the complaint for lack of jurisdiction over the subject matter, on the ground that the Board was exercising its discretion in performing its duty under the Railway Labor Act to investigate a representation dispute.

■ It is well settled that the jurisdiction of the courts in employee representation proceedings before the National Mediation Board is extremely limited. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express and Station Employees v. Association for Benefit of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); Flight Engineers' International Association v. National Mediation Board et al., 119 U.S.App.D.C.

1. The prayer of the August 25 petition was reiterated in two additional petitions of the Clerks alleging improper activities by Pan American (by urging employees interested in the Clerks to vote for the Clerks rather than abstain), and by a

third Union (the Transport Workers Union of America, violating the AFL-CIO constitution by embarking on its own "write-in" campaign although it had not filed cards with the Board).

171, 338 F.2d 280 (1964). The principle of these decisions requires dismissal, without consideration of the merits, of the appellants' claim for relief on the ground that the Board scheduled a second election without permitting enough time to elapse to eradicate the taint or prejudice of the frauds which required setting aside the first election. The Board did delay the second election to some extent—albeit at least in part for the purpose of assuring that the holding of the election would not be interfering with the appropriate Government agencies conducting an investigation of the matter.[2] The Board apparently concluded that the delay already ordered was sufficient to permit a second election that was fair and free. It also rejected appellants' claims either that assignment of responsibility for the forgery and unauthorized mailing was a necessary condition of a fair second election, or that the absence of ascertainment of responsibility required a longer intervening time period.

■ In his oral opinion the District Judge noted that he found a great deal of merit in the Clerks' contention that the delay was too short to forget the message of the forged letters, but that the court was without power to substitute its view for that of the Board. We share his concern and we share his conclusion. The questions involved here are of the kind committed by the Railway Labor Act to the Mediation Board and not the courts. The Board may rightly have assigned weight to the employees' interest in representation by a union of their own choice, and at the earliest feasible time. Although the record does suggest that the Board has not been sufficiently concerned with the importance of doing its utmost to scrape away all stain of the fraud, we hesitate to conclude that the Board's action was so gross as to invest the court with jurisdiction. We are a

shade more hesitant to intrude since the matter is before us on injunctive relief rather than the merits, and granting of stay traditionally calls for a determination that there is a "probability" that applicants will be successful on the merits. Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

■■ Appellants have another contention, however, which requires further reflection. They say that for reasons explored further below, the Board's letter of November 2, 1966, to Pan American employees eligible to vote was such as to mislead them affirmatively as to a material matter underlying the election. In a case of a demonstrably false and misleading statement in the Board's announcement of the new election the courts are not without jurisdiction. The right to a fair and free election is plain under the Act, and although this is generally committed to the Mediation Board for protection and vindication, a demonstration that the Board has launched an election with recourse to false statements is a basis for invoking the jurisdiction of the courts as a necessity for preserving the rights involved. It would take an explicit mandate to compel a contrary conclusion. We see no such mandate either in the statute or the decisions of the Supreme Court. On the contrary, this type of exceptional jurisdiction is within the contemplation of the Supreme Court's decision in the *Switchmen's Union* case (see particularly 320 U.S. at 300–301, 64 S.Ct. 95).

■ To invoke this exceptional jurisdiction of the courts more is required, however, than bare or conclusory allegations of false statements. We turn to the specifics of appellants' complaint, said to show the presence of jurisdiction.

---

2. Filed in support of the Board's motion, in the alternative, for summary judgment, was the affidavit of the Board's executive secretary who stated that in early September 1966, following receipt of the Clerks' petition alleging fraud, the Board postponed count of the ballots in the first election and referred the matter to both the Post Office and Justice Departments. On September 27, the Justice Department advised the Board that it could proceed with the election without jeopardizing further investigation by the Justice Department.

The Clerks begin by stressing the fact that the Board's announcement of October 6 did not state the reasons for its decision to set aside the first election. The Teamsters exploited the Board's omission of reasons by circulating among the employees, in the second election campaign, a document captioned:

THE REAL REASON—
FOR A SECOND VOTE
BRC Admitting Defeat

As Lies, Smears Backfire.

The Clerks protest the opportunity given the Teamsters to circulate a document which, they aver and with some reason, "attributed the Board's action in vacating the election to violations of Federal law" —on the part of the Clerks![3] The Clerks allege that they called this document to the attention of the Board, but they do not say exactly when.

Moreover, claim the Clerks, the Board's sin of omission was capped by sins of commission. They refer particularly to two paragraphs in the Board's letter of November 2, 1966, to the Pan American employees.

> However, it was called to the Board's attention that certain additional campaign tactics over-stepped the bounds of propriety and in fact some representations made to voters were fraudulent. The Board received evidence that letters were sent to voters allegedly over the signatures of the President of the AFL-CIO and the President of the Brotherhood of Railway and Steamship Clerks which were unauthorized. These letters were also written on what was represented to be official stationery or authorized letterheads of these respective organizations. Other communications issued and inducements offered to eligible voters were the

basis of additional objections filed with this Board.

\*　\*　\*　\*　\*　\*

> All eligible voters are now on notice that certain letters and communications which you received during the course of the first balloting period were not authorized nor sent by George Meany, President of the AFL-CIO; and C. L. Dennis, President of the Brotherhood of Railway and Steamship Clerks, respectively, and the positions attributed to them in those communications does not reflect their views. This Board has been officially informed that the Brotherhood of Railway and Steamship Clerks—Airline Division wishes to remain off the ballot.

This letter presents some problems. It states that unauthorized letters were sent out over the signature of the Clerks' president, but does not state which ones were unauthorized. The Clerks did send out other communications that were consistent with its stay-away approach. However, some indication of which letters were unauthorized is provided by two factors: (1) only one letter purported to be signed by Mr. Meany; (2) the second quoted paragraph, specifically referring to the sending of unauthorized letters, immediately states that the Clerks wish to remain off the ballot. Even so, the letter was hardly felicitous, as Board counsel admits. The Board would have done better to say outright that the Clerks do not want a write-in campaign, and that letters to the contrary were unauthorized. Such forthrightness would have been a sharper and cleaner surgery to remove the cancer. But there was no misrepresentation in what the Board said and we cannot say that confusion was so compounded that the Board

---

3. The Teamsters' circular noted that the Board had not given its reasons for its action announced October 6, and stated in bold face type:

> No one will ever know which of the BRC's charges brought the decision— or whether, perhaps, the Board acted because of irregularities by the BRC

itself. There was, for example, the widely publicized free booze party at Cocoa Beach, Florida, at which ballots were collected at the door. This was a clear violation of Federal law.

BRC refers, of course, to the Brotherhood of Railway Clerks.

could not honorably and conscientiously have concluded that this was a reasonable effort to wipe the slate clean.

More troublesome is the basic cast of the letter, and particularly the first of the paragraphs quoted. The letter as written tends to lend support to the Teamsters' contention that it was the Clerks' dereliction by way of which inducements to the employees may have been the cause for voiding the first election. In this aspect the letter may be plagued by a misstatement. Counsel for the Clerks points out that inducements by the Clerks were not the basis of objections filed with the Board, at least in the sense of objections to the holding of the first election. The alleged "booze party" inducements were cited—*after* the Board voided the first election—in support of a Teamster letter request to hold the election by ballot-boxes rather than by mail. That point apparently cut no ice with the Board, as the request was promptly denied. At oral argument Board counsel stated that objections had been lodged informally with the Board, and therefore its statement was not inaccurate.

A difficulty arises whether the Board's letter, however accurate literally, was not misleading in substance. The problem arises out of the Board's lack of specificity concerning the fraudulent communications. We are concerned that the Board may have cast its statement so blandly, perhaps in an overzealous effort to maintain the appearance of impartiality, as to be confusing where it should have been clarifying. It will not do to say that both candidates have been accused of wrong when the fact is that one has been indicted for murder, and the other has only received a parking ticket. Impartiality in fact may require a specific statement of the Board's reasons for its action, which labels the fraud as a major violation requiring a clean slate, and

does not confuse or conceal this central point in a quest for even-handed verbiage.

■ However it seems to us that appellant did not focus before the Board on the more narrow problems now emphasized before us. So far as appears from the papers filed in court, what was stressed before the Board was a prayer for delay, not a prayer for further clarification in an election to be held expeditiously. While the Board's letter was unfortunate and even vexing, and reflected faults that could have been avoided if composed with more care and forthrightness, we cannot say at this juncture that it is probable that this court could determine that appellant made allegations in its complaint of the kind of misstatement that provides a predicate for the court's exceptional jurisdiction discussed above.

■ As already noted there is an interest in prompt elections. The Board made some effort to wipe out the fraud. A stay pending appeal is always an extraordinary remedy, and it is no less so when extraordinary jurisdiction must be asserted as a prerequisite. This is offset to some extent by the practical consideration that in a case like this the application for a stay is often the battle and more than a mere skirmish. On the other hand there is at least a possibility that if the second election is stained, due to the persisting impact of the forgery and/or of confusion engendered by the Board's letter, corrective relief may be available.[4] After the most careful consideration, we conclude the stay requested of us should be denied.

It is so ordered.

BURGER, Circuit Judge (concurring):

I agree that our jurisdiction is narrow and limited but I cannot quite agree that the Board's action falls short of calling for our intervention by means of a stay

---

4. It should be noted that in response to a question at argument Board counsel asserted that if developments lead the Board to conclude the second election was tainted by fraud, it has authority to set aside the election even though the ballots have been counted.

of governmental action. The Board's curative efforts here were extraordinarily feeble when considered alongside the blatant fraud and forgery by persons advocating the cause of the Teamsters Union. The Board's complacency has a clear tendency to encourage the shocking conduct which it purports to chide. If such tactics succeed, the victory of the Teamsters will be the fruit of gross fraud, forgery and chicanery. Except for the adjective "gross", which I think valid, it seems to me we all agree on the vice of conduct complained of.

I refrain from recording a dissent only because of the likelihood that Appellants may take steps to set aside the election, should it be adverse to them.

## APPENDIX

## NATIONAL MEDIATION BOARD
Washington, D. C. 20572

In the Matter of the Application of:

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
(Airline Division)

alleging representation dispute pursuant to Section 2, Ninth,

of the Railway Labor Act

Involving Employees of:

PAN AMERICAN WORLD
AIRWAYS, INC.

Case No. R–3781

November 2, 1966

### DECISION AND ORDER

On October 11, 1966, the Brotherhood of Railway and Steamship Clerks and certain individual Pan American employees petitioned the National Mediation Board (1) to dismiss the petition of the International Brotherhood of Teamsters in the above entitled proceeding, or (2) in the alternative to hold in abeyance the second election authorized by this Board in its letter of October 6, 1966, until a free, fair and uncoerced election can be held.

On October 13, 1966, the Board denied the request of the Brotherhood of Railway and Steamship Clerks as outlined in its petition filed October 11, 1966.

On October 24, 1966, a petition to reconsider its action of October 13, 1966, was filed by the Brotherhood of Railway and Steamship Clerks and a memorandum in support thereof was filed on the same date.

On October 25, 1966, the Board notified all parties that it would hear oral argument on the petition for reconsideration of the action taken on October 13, 1966.

On October 31, 1966, oral argument was heard by the full Board and a transcript thereof was taken.

On the basis of the entire record presently before it, the National Mediation Board hereby grants the motion for reconsideration and upon such reconsideration, adheres to its decision of October 13, 1966, except that the balloting among the individual employees is hereby rescheduled to commence on November 14, 1966, with the return date for the receipt of said ballots to be no later than December 12, 1966.

Sufficient reason appearing therefor, it is also hereby ordered that a communication to each eligible employee in the form attached hereto be dispatched by U. S. Mail.

By direction of the NATIONAL MEDIATION BOARD.

Thomas A. Tracy
Executive Secretary

NATIONAL MEDIATION BOARD
Washington, D. C. 20572

November 2, 1966

TO: EACH PAN AMERICAN EMPLOYEE ELIGIBLE TO VOTE
IN CASE NO. R–3781

———◆———

During August 1966, after finding that a dispute existed involving representation of clerical and related employees, the National Mediation Board attempted to conduct an election and sent ballots to each eligible employee.

While the election was in progress and subsequent thereto, the Board was apprised that certain representations were made to the eligible voters by the International Brotherhood of Teamsters, the Brotherhood of Railway and Steamship Clerks, and the Carrier. Normally, such course of conduct and expression of views is to be expected during a representation proceeding and this Board did not take cognizance of such campaigning.

However, it was called to the Board's attention that certain additional campaign tactics over-stepped the bounds of propriety and in fact some representations made to voters were fraudulent. The Board received evidence that letters were sent to voters allegedly over the signatures of the President of the AFL-CIO and the President of the Brotherhood of Railway and Steamship Clerks which were unauthorized. These letters were also written on what was represented to be official stationery or authorized letterheads of these respective organizations. Other communications issued and inducements offered to eligible voters were the basis of additional objections filed with this Board.

In these premises, the Board determined to set aside the election held in August 1966.

It is the statutory duty of this Board under Section 2, Ninth, of the Railway Labor Act to resolve questions of representation as expeditiously as possible. It is also the duty of this Board to conduct elections under circumstances in which eligible voters can exercise a free and informed choice.

All eligible voters are now on notice that certain letters and communications which you received during the course of the first balloting period were not authorized nor sent by George Meany, President of the AFL-CIO; and C. L. Dennis, President of the Brotherhood of Railway and Steamship Clerks, respectively, and the positions attributed to them in those communications does not reflect their views. This Board has been officially informed that the Brotherhood of Railway and Steamship Clerks—Airline Division wishes to remain off the ballot.

The National Mediation Board is of the opinion that sufficient time has passed since the original vote was conducted for the eligible voters to cast their ballots under appropriate conditions. All eligible voters are now officially informed, through this communication and in the election notice which you will receive, concerning the official position of the Board and the Rules and Regulations

under which this question of representation will be determined.

The National Mediation Board will, within the next few days, send you a new ballot with instructions. These documents constitute the only official statements with regard to our election and certification procedure which you will receive or which any one is authorized to publish during the course of this election.

By order of the NATIONAL MEDIATION BOARD.

Thomas A. Tracy
Executive Secretary