**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SONOMA VINEYARDS, INC., Respondent.**

**No. 83–7025.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1983.

Decided March 6, 1984.

John Burgoyne, Asst. U.S. Atty., Washington, D.C., for petitioner.

Wesley J. Fastiff, David Durham, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for respondent.

Before WALLACE, BOOCHEVER, Circuit Judges, and WYZANSKI, Senior District Judge.*

BOOCHEVER, Circuit Judge.

The National Labor Relations Board (the Board) seeks enforcement of an order to bargain in good faith. The Board found Sonoma Vineyards, Inc. (Sonoma or the Company) in violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(1) and (5) (1976), because Sonoma refused to bargain with Distillery Workers Union, Local No. 186, AFL–CIO (the Union). The Board certified the Union as the employee bargaining representative after a representation election. Sonoma contends that the certification election was invalid because of conduct by the Union and the Board's election agent, and because the ballots of twenty-one mail order processing employees improperly were excluded from the tally.

We find Sonoma's objections to the conduct of the Union and the Board's agent are without merit. Sonoma has failed to preserve its demand for a hearing on exclusion of the mail order employees. We enforce the Board's order.

---

* Honorable Charles E. Wyzanski, Jr., Senior United States District Judge for the District of Massachusetts, sitting by designation.

## FACTS

### A. The Representation Proceeding

On September 14, 1978, the Union filed a petition for a representation election to be conducted at Sonoma's facilities in Windsor, California. Subsequently, the Union and the Company executed a stipulation as to which employees would be eligible to vote. The stipulated bargaining unit included "mail order processing employees," but excluded "office clerical employees."

Fifty-seven employees voted for the Union, forty against, and fifty-four ballots were challenged. Among the ballots challenged by the Union were those of twenty-one mail order processing clerks, whose job duties included clerical functions. The Company objected to the exclusion of these ballots on grounds that the stipulation required inclusion of the employees in the unit. Sonoma also filed other objections to the conduct of the election.

The Board's Regional Director recommended that Sonoma's objections to the conduct of the election be overruled without an evidentiary hearing. The Regional Director found the stipulation ambiguous with regard to the twenty-one mail order processing clerks, and ordered that their eligibility be resolved after an evidentiary hearing to determine whether the clerks had a "community of interest" with other unit employees. The Board adopted the recommendations and ordered a hearing before an Administrative Law Judge (ALJ). Subsequently, the ALJ found that the mail order processing employees lacked sufficient community of interest with the other unit employees, and he sustained the challenge to the ballots. The Board adopted the ALJ's report and certified the Union as the collective bargaining representative.[1]

### B. The Unfair Labor Practice Proceeding

Sonoma concedes that it refused to bargain with the Union after certification. In opposition to the unfair labor practice charges, Sonoma repeated its earlier arguments opposing Union certification. Sonoma also presented to the Board what it termed "newly discovered evidence" of bias involving the Board agent who conducted the election. Sonoma alleged that the agent obtained employment with the Union three years after the election.

The Board granted summary judgment against Sonoma. It found that the certification issues were or could have been litigated in the prior representation proceeding, and the alleged "newly discovered evidence" of bias did not warrant decertification. The Board ordered the Company to bargain with the Union.

On appeal, Sonoma argues that the Board improperly certified the Union as the bargaining representative without a hearing on Sonoma's objections. Sonoma repeats its earlier allegations that the Board agent exhibited bias, that the Union initiated rumors that immigration authorities would be called to arrest illegal alien employees, and that one employee improperly was disenfranchised by the Board agent. Sonoma also contends the unit stipulation unambiguously required inclusion in the unit of the twenty-one mail order employees. Sonoma argues that even if the stipulation was ambiguous, the Board should have held a hearing to establish the intent of the parties prior to deciding whether the disputed employees shared a community of interest with other unit members.

## DISCUSSION

### I. Standard of Review

■ The Board's conclusions and findings of fact must be affirmed if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 485–487, 71 S.Ct. 456, 463–64,

---

1. The Union's attorney sent a letter to the Regional Director stating that he believed the Union's challenges to the stipulation were meritorious. This letter was not served on the Company. Upon discovering that the letter had been filed, the Company filed a brief prior to the hearing officer's report rebutting the Union attorney's statement. The Board found that the letter did not prejudice the Company.

95 L.Ed. 456 (1951); *NLRB v. Vista Hill Foundation,* 639 F.2d 479, 483 (9th Cir.1980).

■■■ The Board has broad discretion in conducting and supervising representation elections. *Summa Corp. v. NLRB,* 625 F.2d 293, 295 (9th Cir.1980); *Coronet-Western v. NLRB,* 518 F.2d 31, 32 (9th Cir.1975) (per curiam). "The Board is required to grant an evidentiary hearing only where substantial and material factual issues are raised, and the party objecting to the election must supply the Board with evidence establishing a prima facie case for disturbing the results." *St. Elizabeth Community Hospital v. NLRB,* 708 F.2d 1436, 1444–45 (9th Cir. 1983). We will overturn the Board's certification of a union without a hearing on objections only if the Board has abused its discretion. *Spring City Knitting Co. v. NLRB,* 647 F.2d 1011, 1017 (9th Cir.1981). Hearing is unnecessary where, if all the facts contended by the objecting party were credited, no ground is shown which would warrant setting aside the election. *NLRB v. Harrah's Club,* 403 F.2d 865, 869 (9th Cir.1968).

## II. Analysis

### A. Bias of the Board Agent

The Company argues that three incidents demonstrated a prima facie case of bias of the Board's agent, Lee Corbett, requiring an evidentiary hearing. We find none of the incidents persuasive of bias.

■■■ In the first incident, a Union observer asked agent Corbett what would happen to the ballots that had been challenged. Corbett replied that the Union could prove the challenges individually or by groups, and that he thought it would be very easy for the Union to prove its challenges. The Company's observer stated that employees came up to vote "between" the comments.

It is unlikely that this allegedly offending conduct interfered with or inhibited the free choice of the employees in selecting their bargaining representative, or with the employee's actions at the polls. *See Valley Rock Products, Inc. v. NLRB,* 590 F.2d 300, 302 (9th Cir.1979) (per curiam). There is no indication that the statements were heard by any employee other than the Company's observer. Other circuits have found similar comments harmless. *See NLRB v. Allen's IGA Foodliner,* 652 F.2d 594, 595–96 (6th Cir.1980) (Board agent's comment that "if the employees had been treated right she would not be there holding the election"); *NLRB v. Computer Science Corp.,* 589 F.2d 232, 235 (5th Cir.1979) (per curiam) (Board agent's comment that the Company's challenges were frivolous did not demonstrate partiality). We affirm the Board's rejection of this objection.

■■■ We also find no indication that the Board agent's method of informing employees that their ballots were challenged was biased. Initially, the Board agent told voters that the Union had challenged their votes. Challenged voters repeatedly became indignant or upset when so informed, and the Union expressed concern over the voters' reactions. Consequently, throughout the afternoon voting session the Board agent simply informed employees that their votes were being challenged without identifying the Union as the challenger. It is unclear precisely how the agent's procedure evidenced bias, and Sonoma cites no authority supporting its objection. It seems unlikely the agent's procedures affected the outcome of the election. The Board did not abuse its discretion in overruling this objection without a hearing.

■■■ The Company also alleges that the Board agent violated 29 C.F.R. § 102.119 [2] by obtaining employment with the Union as a business representative subsequent to the election. The election was held on December 8, 1978. The Board's agent began working for the Union three years later, in

---

**2.** 29 C.F.R. § 102.119 (1983) provides:

No person who has been an employee of the Board and attached to any of its regional offices shall engage in practice before the Board or its agents in any respect or in any

capacity in connection with any case or proceeding which was pending in any regional office to which he was attached during the time of his employment with the Board.

1981. We agree with the Board that the agent's employment three years after the election did not affect the impartiality of the election. Nor did the former Board agent represent the Union before the Board in this case in violation of 29 C.F.R. § 102.119.

### B. Disenfranchisement of a Voter

The Company alleges that the Board agent improperly forced employee Frank Carillo to wait before voting, causing Carillo to become upset and not vote. There was a dispute between a Union observer and another employee over Carillo's eligibility to vote. The Board agent asked the observer if the Union intended to challenge Carillo. The Union observer replied that he was uncertain and wished to wait until another Union observer returned. The Board agent asked Carillo to stand aside. After waiting more than ten minutes, Carillo left voluntarily without voting or telling the Board agent he was leaving. He did not return, although the polls were open a second time during his shift.

■ Our research has not disclosed a case with precisely the facts at issue here. A number of analogous situations, however, suggest that it may be within the discretion of a Board agent to impose reasonable delays on voters in order to ascertain their eligibility. The Board's Case Handling Manual, for example, expressly permits election agents to ask challenged voters to remain at the polling place awaiting a slack period to cast their ballots. The Board also encourages its agents to avoid unnecessary election delays because of groundless challenges. *Fulton Bag & Products Co.,* 121 N.L.R.B. 268, 270 n. 5 (1958). On similar facts, the Fifth Circuit declined to set aside an election. *NLRB v. W.R. Grace & Co.,* 571 F.2d 279, 282 (5th Cir.1978) (employee left when Board agent questioned his eligibility). An occasional inconvenience may be required of employees in order to vote. The Ninth Circuit has refused to set aside

elections where employees voluntarily failed to vote, even though voting would have caused the employees personal hardships. *See Beck Corp. v. NLRB,* 590 F.2d 290, 293 (9th Cir.1978) (per curiam) (election held during employees' scheduled day off); *ITT v. NLRB,* 294 F.2d 393, 394–95 (9th Cir. 1961) (possible loss of employees' daytime jobs). In the instant case, there was no indication that the Union observers used this technique as a delaying tactic to discourage certain voters. Nor was it apparent that the minor delay caused Carillo not to return to the poll later in the day. We find that the Board did not abuse its discretion by overruling this objection without an evidentiary hearing.

### C. Alleged Threats of Deportation

■ The Company submitted to the Board a declaration by a supervisor that several unnamed employees told him that another unnamed employee claimed that yet another employee, allegedly a Union supporter, had suggested at a Union meeting that the Border Patrol be called, presumably to discover and eliminate any illegal aliens in the work force before the election.[3] The declaration alleged that several employees of Mexican descent "were very upset by these rumors." Sonoma submitted no evidence of the number of employees allegedly exposed to and upset by the rumor, or that the Border Patrol actually was called. Nor did Sonoma show any employee was deterred from voting or voted against his choice.

■ Apart from the unreliability of the supervisor's hearsay declaration, *see NLRB v. Hepa,* 597 F.2d 166, 167 (9th Cir.1979) (per curiam), we find little indication that the deportation threat could be attributed to the Union. Sonoma made no prima facie showing that the Union approved of the threat. At most, Sonoma alleges an isolated statement by an unidentified person at an open Union meeting. The Union could not control every statement made at an

---

**3.** The employees allegedly would not allow use of their names for fear of deportation. Presumably, they would have the same fear of

coming forward if an evidentiary hearing were held.

open meeting. *See May Department Stores Co. v. NLRB,* 707 F.2d 430, 433 (9th Cir. 1983). *Cf. Bush Hog, Inc. v. NLRB,* 420 F.2d 1266, 1269 (5th Cir.1969) (court should not invite third parties to create incidents that could invalidate an election). We find unpersuasive Sonoma's contention that a party may become a union agent merely by speaking at such a meeting.

█ Incidents which are not attributable to a union are entitled to less weight than union-attributable statements in determining whether a free election was possible, *NLRB v. Spring Road Corp.,* 577 F.2d 586, 588 (9th Cir.1978); *NLRB v. Aaron Bros. Corp.,* 563 F.2d 409, 412 (9th Cir.1977) (per curiam), because "there generally is less likelihood that they affected the outcome." *NLRB v. Mike Yurosek & Sons, Inc.,* 597 F.2d 661, 663 (9th Cir.), *cert. denied,* 444 U.S. 839, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

On several occasions this court has addressed allegations that deportation threats by union adherents created an atmosphere of coercion sufficient to invalidate an election. *See, e.g., NLRB v. Eskimo Radiator Mfg. Co.,* 688 F.2d 1315, 1319 (9th Cir.1982) (per curiam); *Mike Yurosek & Sons,* 597 F.2d at 662–63; *NLRB v. Heath Tec Division/San Francisco,* 566 F.2d 1367, 1372 (9th Cir.), *cert. denied,* 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978). We have noted that "[d]eportation rumors which are not attributable to the union do not automatically result in overturning the election." *Eskimo Radiator,* 688 F.2d at 1319. In *Eskimo Radiator* the court upheld the Board's denial of such an objection without an evidentiary hearing. As in the instant case, the employer in *Eskimo Radiator* offered no prima facie evidence that any employee's vote was affected by the rumor. *Id.*

Because the deportation rumors were not attributable to the Union, and the employer

presented no prima facie evidence that any employee was coerced, no evidentiary hearing was required.

### D. The Unit Stipulation

Sonoma contends that the unit stipulation was unambiguous and clearly compelled inclusion of the disputed mail order employees in the bargaining unit. Alternatively, Sonoma argues that even if the stipulation was ambiguous on its face, the Board should have held a hearing to determine the intent of the parties before deciding the eligibility of the employees based on traditional Board principles.

█ When a union and an employer enter into a stipulation of this sort, the Board is bound by the stipulation's terms unless the stipulation violates applicable statutes or settled Board policy. *NLRB v. Mercy Hospitals of Sacramento, Inc.,* 589 F.2d 968, 972 (9th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979); *NLRB v. Detective Intelligence Service, Inc.,* 448 F.2d 1022 (9th Cir.1971). No one contends that the stipulation at issue violated Board policy or the law. Instead, the Board found the stipulation was ambiguous, and therefore was not determinative of the eligibility of the disputed employees.

█ The ambiguity arose because the stipulation included within the unit "mail order processing employees," but excluded "office clerical employees." [4] Although these terms appear clear on their face, they become less clear when the job duties of the disputed employees are considered. The employees were termed "mail order processing employees." Their job station, however, was separated from other mail order processing employees, and, unlike other mail order employees, their duties included significant amounts of clerical tasks. The stipulation did not state how employees

---

4. The bargaining unit stipulation read in its entirety:

12. THE APPROPRIATE COLLECTIVE–BARGAINING UNIT.—

All production and maintenance employees of the Employer at its Windsor, CA facilities, including cellar employees, tasting room em-

ployees, maintenance and repair employees, mail order processing employees, labeling employees, shipping and receiving employees; and excluding catering employees, office clerical employees, guards and supervisors as defined in the Act.

with such mixed duties were to be classified. We find substantial evidence supports the Board's conclusion that the stipulation was ambiguous with regard to the disputed employees.

Assuming the stipulation was ambiguous, "[T]he primary question ... is what the parties meant." *NLRB v. Joclin Mfg. Co.,* 314 F.2d 627, 633–34 (2d Cir.1963). Sonoma contends the Board erred by failing to hold a hearing to determine the intent of the parties before applying its "community of interest" test.

 Throughout the proceedings before the Board, however, Sonoma contended that no hearing was necessary, because the stipulation was unambiguous. At no time did Sonoma request a hearing to introduce parol evidence of an understanding by the parties outside of the written agreement; Sonoma's unwavering position was that no evidence of external agreements was necessary or relevant.[5]

In the absence of extraordinary circumstances, no objection may be raised on appeal if it has not been urged before the Board. 29 U.S.C. § 160(c). *See NLRB v. Sambo's Restaurant, Inc.,* 641 F.2d 794, 796 (9th Cir.1981). We find no extraordinary circumstances justifying Sonoma's failure to request a hearing on intent. Consequently, we find Sonoma has failed to preserve its objection to the Board's failure to hold such a hearing.

## CONCLUSION

We find the Board's rejection of Sonoma's objections to the certification election

without an evidentiary hearing was not an abuse of discretion. The Board's finding that the stipulation was ambiguous with regard to the disputed mail order employees is supported by substantial evidence. Sonoma has failed to preserve its objection to the Board's failure to hold a hearing to determine the intent of the parties. The Board's order is enforced.

ORDER ENFORCED.

---

**5.** Sonoma's counsel at oral argument referred to its objections to the findings of the Regional Director as an indication that Sonoma had raised the issue of intent before the Board. Sonoma's Objection No. 69 reads:

To the Regional Director's finding that "it is not possible to establish with clarity the intent of the parties in describing the appropriate unit."

Sonoma's Objection, however, does not demand a hearing on intent. It merely repeats Sonoma's contention that the parties' intent was clear from the face of the document. We find more revealing Sonoma's Objection Nos. 66 and 68, which read:

To the Regional Director's suggestion that any oral agreement asserted by Petitioner at

this time is relevant to proper determination of challenged ballots when controlling precedent makes clear that an alleged oral agreement may not be relied upon to controvert the clear terms of a written stipulation as to voter eligibility.

. . . . .

To the Regional Director's inclusion of Petitioner's contention in this report since controlling precedent makes clear that any alleged oral misunderstanding is completely irrelevant to the proper disposition of challenged ballots where voter eligibility is made clear by a written stipulation.

It appears to have been Sonoma's position that evidence of agreements external to the stipulation was "completely irrelevant."