NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CARL WEISSMAN & SONS,
INC., Respondent.

No. 87–7176.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1988.

Decided June 16, 1988.

Leslie S. Waite, III, Waite, Schuster & Larson, Great Falls, Mont., for respondent.

Mark McCarty, N.L.R.B., Washington, D.C., for petitioner.

Before BROWNING, Chief Judge, NORRIS and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

Carl Weissman & Sons, Inc. ("the Company") refused to bargain to test its objections to a rerun election in which employees chose union representation. The first election, conducted 56 days earlier, was overturned by the Board because of an anti–Semitic remark by a union official eleven days before the first election was held. The Company argues the rerun election was scheduled too soon after the offensive remark, and should have been held after the Board conducted a hearing to determine whether the prejudicial effect of the remark had been dissipated. We hold the Board did not abuse its broad discretion in scheduling the second election when it did.

I

The NLRB conducted a representation election for the Company's employees on March 24, 1986. The Iron Workers Union won by a vote of 9 to 6. The Company challenged the election because a union official told employees at a March 13th meeting that "the Weissmans were pretty stingy with their wages and they had the right kind of background for being stingy." The Board set the election aside.

A second election was held on May 19, 1986. The Union prevailed by a vote of 13 to 4. The Company objected, contending the Board should have interviewed employees to determine whether the prejudicial impact of the union's remark had been dissipated before holding the election. The Company requested a hearing on the objection. The Board asked the Company to provide it with a statement of the evidence and list of the witnesses it would present at such a hearing. The Company did not respond. The Regional Director recommended the objection be overruled because "ample time passed to dissipate the effects of the March 13 remarks" and because "no evidence has been presented to show that there were further negative religious references in the election campaign." The Board certified the results of the election.

The Company refused to bargain. The Board found the Company in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) and (5).

II

The Company presented no evidence that the second election was tainted by prejudice. Rather, it argues the 67–day period between the remark and the second election was inherently too short. In the alternative, it argues the Board should not have scheduled a new election without first interviewing employees to determine whether the taint of the prejudicial remark had dissipated.

Neither party has cited a case involving a challenge to the timing of a rerun election and we have found none. We therefore resolve the issue on general principles.

The Board has broad discretion in representation matters, including the scheduling of elections. *NLRB v. Sonoma Vineyards, Inc.,* 727 F.2d 860, 863 (9th Cir.1984); *Summa Corp v. NLRB,* 625 F.2d 293, 295 (9th Cir.1980). The Company argues this discretion is limited by the Board's own requirement that representation elections be conducted under "laboratory conditions", a requirement the Board interprets as requiring invalidation of an election if a party seeks to inflame racial or religious bias. *See Sewell Mfg. Co.,* 138 NLRB 66, 69–72 (1962). It is nonetheless true, however, that the Board retains "broad discretion to determine whether the circumstances of an election come sufficiently close to laboratory conditions so that employees can exercise free choice in deciding whether to select the Union as their representative." *Amalgamated Serv. & Allied Indus. Joint Bd. v. NLRB,* 815 F.2d 225, 227 (2nd Cir.1987). *See also e.g., NLRB v. Best Products Co.,* 765 F.2d 903, 913 (9th Cir.1985); *NLRB v. Heath Tec Division/San Francisco,* 566 F.2d 1367, 1372 (9th Cir.1978).

The Company and amicus argue the protection of representation elections from religious prejudice is an extremely important goal. However, sensitivity to religious prejudice cannot justify indefinite postponement of a vote on union representation to which employees are statutorily entitled. The central issue is whether the Board abused its discretion in balancing these considerations.

The Company does not suggest what standards an appellate court should apply to determine whether a rerun election has been scheduled too quickly. The decision that a delay of 67 days would fairly balance the competing interests would seem to be a decision of the kind particularly within the expertise of the NLRB officials in immediate contact with the situation. In *Brotherhood of Ry. & S.S. Clerks v. Nat'l Mediation Bd.*, 374 F.2d 269, 273 (D.C.Cir.1966), the court rejected a contention that "delay between elections was too short to forget the message" of forged letters distributed to voters. The court held such questions "are of the kind committed by the Railway Labor Act to the Mediation Board and not the courts. The Board may rightly have assigned weight to the employees' interest in representation by a union of their own choice, and at the earliest feasible time." *Id.* [1] Similarly, whether serious unfair labor practices by an employer make it un-

likely that a fair rerun election can be held is a determination "for the Board and not the courts ... to make ..., based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity. In fashioning its remedies under ... the Act ..., the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n.32, 23 L.Ed.2d 547 (1969). The time lapse between the elections in this case does not represent a significant deviation from the period usually fixed in scheduling rerun elections.[2]

The Company argues the Board should presume the taint of religious prejudice lingered [3], and should not schedule a second election until members of the bargaining unit have been interviewed and it has been determined that the taint has dissipated. There is no authority for imposing such a requirement. In a related context, the Supreme Court rejected "any rule that requires a probe of an employee's subjective motivations as involving an endless and unreliable inquiry." *Id.* at 608, 89 S.Ct. at 1937. Such an inquiry would only serve to remind employees of the single, isolated religious slur, and thus to reinforce its effect.[4]

---

1. The Board also may have considered that "delay itself almost inevitably works to the benefit of the employer and may frustrate the majority's right to choose to be represented by a union ..." *Amalgamated Clothing & Textile Workers v. NLRB*, 736 F.2d 1559, 1563 (D.C.Cir.1984) (relying on empirical data contained in Roomkin & Block, *Case Processing Time and the Outcome of Representation Elections: Some Empirical Evidence*, 1981 U.Ill.L.Rev. 75, 88–97, and in Weiler, *Promises to Keep: Securing Workers Rights to Self–Organization Under the NLRA*, 96 Harv. L.Rev. 1769, 1793–95 (1983)).

2. *See* Pollitt, *NLRB Re–Run Elections: A Study*, 41 N.C.L.Rev. 209, 221 (1963) (survey of 267 rerun elections showed that 28 percent occurred less than two months after the first election, and 75 percent occurred less than six months after the first election).

3. The Company also argues prejudice lingered because the remark had to do with wages, and employees would be reminded of the remark every time they received wages. As the Board

correctly noted, this speculation would mean employees could never have an election so long as they continued to receive wages.

4. The authorities relied upon by the Company are inapposite. *Sonoco Products Co. v. NLRB*, 399 F.2d 835, 840–42 (9th Cir.1968), held only that in determining whether the second election was tainted the Board may not totally exclude consideration of an incident because it occurred on the day of the first election. Board decisions like *Kerona Plastics Extrusion Co.*, 196 NLRB 1120 (1972) (overturning an election where a Board agent inadvertently closed the polls 20 minutes early) reflect the Board's concerns with maintaining its own standards and those of its agents in the conduct of elections, a consideration not present here. The conduct of a union official, not a Board agent, created the problem. The Company's argument that the Board should follow the analogy of such cases as *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) and fashion relief on the premise that the taint resulting from a racial

We find the Board did not abuse its discretion in fixing the date of the second election.

### III

 The Company argues the Board should have conducted a hearing on the Company's objections to the rerun election. The Board's decision not to grant a hearing on election objections is reviewed for abuse of discretion. *NLRB v. West Coast Liquidators, Inc.*, 725 F.2d 532, 535 (9th Cir. 1984); *May Dept. Stores Co. v. NLRB*, 707 F.2d 430, 432 (9th Cir.1983).

"[I]n order to secure an evidentiary hearing regarding objections to an election, 'the objecting party must supply prima facie evidence, presenting "substantial and material factual issues" which would warrant setting aside the election.' " *Vari-Tronics Co. v. NLRB*, 589 F.2d 991, 993 (9th Cir. 1979) (per curiam) (citation omitted). The Board asked the Company to indicate what kind of evidence it wished to present. The Company did not reply. Thus the Company's objection rested solely on the union official's one remark at a single meeting. This fact was not in dispute. The Board assumed it to be true in rejecting the Company's objection. Accordingly, the Board's rejection of the Company's request for a hearing was justified by the simple axiom that "[a]n essential prerequisite to the right to a hearing is something to be heard." *Sonoco Products Co. v. NLRB*, 399 F.2d 835, 839 (9th Cir.1968)(quoting *NLRB v. Carolina Natural Gas Corp.*, 386 F.2d 571, 574 (4th Cir.1967)).[5] As we said in *South Pacific Furniture, Inc. v. NLRB*, 627 F.2d 173, 175 (9th Cir.1980): "The Regional Director and the Board assumed that the statement to the voters had been made. South Pacific cannot demand an evidentiary hearing simply to inquire further into unspecified possible election improprieties."

The Board did not abuse its discretion in declining to hold a hearing. ORDER ENFORCED.

---

slur cannot be effectively erased, is inconsistent with the many cases holding that taint from coercive statements may sufficiently dissipate to permit a fair election. *See e.g., NLRB v. St. Mary's Home, Inc.*, 690 F.2d 1062, 1069 (4th Cir.1982).

**5.** The Company argues it could not make its own survey of employees without violating the NLRA. We are aware of no case punishing an employer for asking an employee whether he or she knew of recent ethnic remarks. Even interrogation about union sympathies does not necessarily violate the Act. *See Rossmore House*, 269 NLRB 1176 (1984), *enforced sub nom. Hotel Employees & Restaurant Employees Union v. NLRB*, 760 F.2d 1006 (9th Cir.1985).