956 F.2d 1167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BRYANT DIE CAST CO., BWF Manufacturing Inc. and M. Stephens
Manufacturing Co., Inc., Respondents.
 No. 90-70356.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 14, 1991.
Decided March 6, 1992.
 
 Before WALLACE, Chief Judge, and GOODWIN and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board (the "Board") petitions for enforcement of its order requiring Bryant Die Cast Co. ("Bryant") to bargain with United Steelworkers of America, Local 500-U (the "Union"). Bryant asks this court to deny enforcement of the Board's order because the certification of the Union was defective. We grant the Board's petition.
 
 
 3
 The dispute in this case concerns a union certification election at Bryant which the Union won by a narrow vote. Bryant filed an objection to the election with the Board, alleging various irregularities. The Board's Regional Director investigated Bryant's allegations and found them to be without substantial merit. Relying on the Regional Director's report, the Board denied Bryant's request for a hearing on its objections and certified the Union. The Board subsequently ordered Bryant to bargain with the Union. Bryant refused and the Board brought this action to compel Bryant's compliance.
 
 
 4
 Before this court, Bryant contends that the Board's decision to certify the Union was improper. In support of this contention, Bryant argues that the Board abused its discretion by failing to review the evidence underlying the Regional Director's report, and by rejecting Bryant's request for a hearing despite Bryant's allegations of electoral improprieties. Both of Bryant's arguments will fail if Bryant has not raised "substantial and material allegations of ... conduct that would, if true, require the election to be set aside." NLRB v. West Coast Liquidators, 725 F.2d 532, 535, n. 2 (9th Cir.1984) (Board abused discretion by failing to review underlying evidence where employer's allegations, if true, would require the election to be set aside); May Dep't Stores Co. v. NLRB, 707 F.2d 430, 432 (9th Cir.1983) ("A hearing on election objections need not be granted unless the objecting party has made 'a prima facie showing of substantial material factual issues that would, if true, warrant setting aside the election.' ") (quoting NLRB v. Advanced Systems, Inc., 681 F.2d 570, 572 (9th Cir.1982)). We turn now to consider whether Bryant's allegations, if true, would have required the election to be set aside.
 
 I. The Chest-Poking Incident
 
 5
 As part of its objections, Bryant provided the testimony of two witnesses who stated that while the polls were open, Luz Camarena, an election observer for the Union, poked a pro-company employee in the chest and said "you are going to lose." As the Regional Director noted, even if the incident happened, there was no basis for believing that the election's outcome would have differed because the pro-company employee had already voted and because Bryant offered no evidence that other employees who had not yet voted observed the incident.
 
 II. The Gang Threat
 
 6
 Bryant filed an affidavit of an employee who stated that another employee, not a Union agent, told her that if she spoke out against the Union, Camarena would send gang members to beat her up. An unsubstantiated rumor of possible union violence, conveyed by an employee who is not a union agent, does not require the election to be set aside. See NLRB v. Hepa Corp., 597 F.2d 166, 167 (9th Cir.1979).
 
 III. Actions of the Board's Agents
 
 7
 Bryant alleges three instances in which the actions of Board agents created an appearance of bias which affected the election. None of these allegations reveal actual or apparent bias.
 
 
 8
 Bryant first points to the Camarena chest-poking incident. Before the Board, Bryant presented the affidavit of an employee who stated that the incident occurred near a Board agent in the vicinity of ten other employees. These allegations do not reveal bias. Bryant offered no evidence that the ten observed the chest-poking incident or that the Board agent knew or approved of the incident. Moreover, the incident participants stated that Camarena had spoken in a low voice. Bryant's failure to present evidence of bias is not excusable because Bryant was not barred from asking the ten employees whether they had observed the incident. See N.L.R.B. v. Carl Weisman & Sons, Inc., 849 F.2d 449, 452 n. 5 (9th Cir.1988).
 
 
 9
 Next, Bryant alleges that the Board agents permitted observers to leave the voting area during the election. However, Bryant's own witnesses stated that the observers left the area to go to the restroom or to pick up a paycheck and that, when this happened, one Board agent would accompany the observer and another Board agent would remain behind at the polls. None of the witnesses alleged that he or she witnessed any observers commit improper behavior.
 
 
 10
 Finally, Bryant alleges that observers were permitted to engage in campaigning during the election at the polls while the polls were open. In support of this allegation, Bryant offered a company observer's statement to the effect that during the election, company and Union observers conversed among themselves when no voters were in the polling area. According to Bryant's own allegations, no voters were present and thus the election was not affected.
 
 IV. Threats Concerning the INS
 
 11
 Bryant alleged that the Union intimidated employees by threatening that the INS would deport them if they did not support the Union. In support of these allegations, Bryant offered statements of employees to the effect that they had heard rumors that whichever side lost the election would call the INS. To the extent that the statements represent generalized fears of the INS which are not attributable to the Union, they do not serve as a basis for setting aside the election. See NLRB v. Eskimo Radiator Mfg., 688 F.2d 1315, 1319 (9th Cir.1982) ("Deportation rumors which are not attributable to the union do not automatically result in overturning the election.")
 
 
 12
 One of Bryant's witnesses stated that union supporters told her that if the company won, the Union would call the INS. Because the supporters were not Union agents, and because Bryant could not otherwise attribute the deportation threat to the Union, this allegation did not affect the election's outcome. See NLRB v. Sonoma Vineyards, Inc., 727 F.2d 860, 865 (9th Cir.1984).
 
 
 13
 V. Threats Concerning the Fate of Anti-Union Employees
 
 
 14
 Bryant presented declarations by employees to the effect that Union supporters told them that the Union would call a strike if it won and that if the employees did not vote for the Union the Union would not represent them, or they would be laid off or fired. Because the union supporters were rank and file employees and not union agents, their statements "are entitled to less weight ... in determining whether a free election was possible." Sonoma Vineyards, 727 F.2d at 865. Even accepting Bryant's employee declarations as true, we agree with the Regional Director that the union supporters' statements constituted individual speculation and normal campaign puffery, and did not rise to the level of threats and intimidation. Questioning the Regional Director's interpretation or inferences of fact is insufficient to establish that the election's outcome should be set aside. Pinetree Transportation Co. v. NLRB, 686 F.2d 740, 745 (9th Cir.1982).
 
 VI. Threats of Criminal Prosecution
 
 15
 To the Board, Bryant presented the declaration of an employee who stated that after the election, he went to Bryant's office to report events that had occurred before the election. When he came out of the office, Camarena asked him what he had said. She allegedly told him that if he went to court and said different things there than he had said to the employer, he would be put in jail. Because this alleged incident occurred after the election, it had no bearing on the election's outcome.
 
 VII. Cumulative Evidence
 
 16
 Bryant argues that the evidence it presented, viewed cumulatively, shows that the Union's conduct interfered with the election. Many of Bryant's arguments are non sequiturs which have no bearing on the outcome of the election. The rest are of a very weak nature which, viewed collectively, do not describe "an atmosphere of fear and coercion, which precluded a fair election." Sequatchie Valley Coal Corp., 281 N.L.R.B. 726 (1986) (cumulative effect of specific death threats precluded fair election).
 
 
 17
 PETITION GRANTED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3